[Civ. No. 64787. Second Dist., Div. Five. May 9, 1983.]

DEBORAH LYNN KITE, a Minor, etc., Plaintiff and Appellant, v. NORMAN CAMPBELL, Defendant and Respondent.

**COUNSEL**

Samuel Shore and James R. McGrath for Plaintiff and Appellant.

Warren & Burleigh, Horvitz & Greines, Ellis J. Horvitz and S. Thomas Todd for Defendant and Respondent.

## OPINION

**FEINERMAN, P. J.**—In this case we are asked to determine the constitutionality of Code of Civil Procedure section 340.5, the medical malpractice statute of limitations, as it applies to a minor plaintiff. We find that (1) the statute is constitutional, (2) it creates a three-year statute of limitations period during which a minor may bring suit for medical malpractice, and (3) it incorporates common law tolling provisions for minors.

Plaintiff appeals from an order of dismissal following an order sustaining a general demurrer to her second amended complaint without leave to amend. We reverse the judgment of the lower court and allow plaintiff another opportunity to amend her complaint.

### STATEMENT OF FACTS

Plaintiff, Deborah Lynn Kite (Deborah), was born on September 24, 1965. From the date of her birth, she came under the care of defendant physicians Doctor Norman Campbell (Campbell) and Doctor Arnold Wong (Wong).[1] Deborah was born with meningomyelocele, a hernial protrusion of a part of the spinal cord and its membranes. Within months of her birth, her condition was intensified by communicating hydrocephalus, a condition characterized by abnormal accumulation of fluid in the cranial vault, accompanied by enlargement of the head, prominence of the forehead, atrophy of the brain, mental deterioration, and convulsions. Obviously, plaintiff required more than the usual amount of medical attention and treatment from the time of her birth.

On November 20, 1972, Deborah contracted mumps. She was treated by Doctor Denver Reed because her regular physicians were unavailable. By December 4, 1972, Deborah had developed complications from the disease which led to partial blindness. She later became totally blind.

---

[1]Doctor Wong is now deceased. His estate was named a defendant in all actions brought in the lower court. The demurrers to plaintiff's complaint were filed on behalf of Doctor Campbell only. Accordingly, the order of dismissal specifies only Doctor Campbell. This appeal names only Doctor Campbell as a defendant.

Deborah filed suit against Doctor Reed in 1976, alleging that her blindness was the result of Doctor Reed's negligent treatment. As part of her preparation for the suit against Doctor Reed, plaintiff, through her attorneys and medical consultants, reviewed pertinent medical records but found no suggestion of negligence on Campbell's part. By 1979 it was apparent that Deborah's blindness was permanent. Her attorneys then further investigated the "complications and effects of contracting mumps." They consulted a second medical expert who alerted them, in August of 1980, to Campbell's purported negligence in failing to inoculate Deborah against mumps. Deborah filed her complaint against Campbell on September 23, 1980. A settlement with Doctor Reed was negotiated in July 1981.

The gravamen of Deborah's complaint against Doctor Campbell is set forth in her second amended complaint as follows:

"Sheila R. Black, the mother and Guardian ad Litem of DEBORAH LYNN KITE was aware that DEBORAH LYNN KITE was receiving immunization throughout the regular course of care rendered by her pediatrician [Campbell], however Sheila R. Black was unaware that all of the immunizations which are required to be given according to the standard of practice were not given to her daughter, including the vaccination for mumps. Sheila R. Black assumed that the complete immunizations were given to her daughter in accordance with the standard of practice, and did not become aware of the fact that this was not done by defendants, until August, 1980, when it was discovered that the defendants and each of them failed to properly immunize her daughter with the mumps vaccination."

DISCUSSION

Code of Civil Procedure section 340.5 states in pertinent part as follows: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) Upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud

or collusion in the failure to bring an action on behalf of the injured minor for professional negligence."

Deborah challenges the constitutionality of Code of Civil Procedure section 340.5, claiming it denies to her equal protection of the law as guaranteed by the United States and California Constitutions. She argues that she and other minor victims of tortious conduct by health care providers must bring suit within three years while other minor tort victims can wait until they are 19 years of age to bring suit under Code of Civil Procedure section 352.

■ Deborah asserts that minor plaintiffs suing for damage for medical malpractice belong to a "suspect class" and that a strict scrutiny standard of review, requiring that the challenged legislation be upheld only if it is necessary for furtherance of a compelling state interest, be applied. Plaintiff's justification for this designation of minors as a "suspect class" is based on language in *Williams* v. *Los Angeles Metropolitan Transit Authority* (1968) 68 Cal.2d 599, 602 [68 Cal.Rptr. 297, 440 P.2d 497], in which the court upheld Code of Civil Procedure section 352, finding that nothing in Government Code section 945.6 abrogated section 352, and finding that the statute effectuated a long recognized principle that, "children are to be protected during their minority from the destruction of their rights by the running of the statute of limitations."[2]

This concern with the protection of minors does not make minors a "suspect class." ■ Suspect classes are those groups saddled with such disabilities, or subject to such a history of purposeful, unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 28 [36 L.Ed.2d 16, 40, 93 S.Ct. 1278].) Traditionally, the members of a "suspect class" are the *victims of discrimination* brought about by a "suspect classification." Included in this category are discriminatory classifications based upon race. (*Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817]), alienage (*Truax* v. *Raich* (1915) 239 U.S. 33 [60 L.Ed. 131, 36 S.Ct. 7]), and sex (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]). The classification of minors is common in such fields as compulsory education, employment, and liability for criminal acts. (See *In re Spencer* (1906) 149 Cal. 396, 401 [86 P. 896]; *People* v. *Walton* (1945) 70 Cal.App.2d Supp. 862, 867 [161 P.2d 498].) ■ However, these classifications do not discriminate against minors; they discriminate in *favor* of minors and implement the interest of the state in the well-being of youth. (*Ginsberg* v. *New York* (1968) 390 U.S. 629 [20 L.Ed.2d 195, 88 S.Ct. 1274].)

---

[2]In contrast to Government Code section 945.6, Code of Civil Procedure section 340.5 was specifically made applicable to minors and does abrogate Code of Civil Procedure section 352 as it applies to actions against a health care provider.

The strict scrutiny standard is also invoked when a fundamental right guaranteed by the Constitution has been threatened, such as the right to vote or the right to pursue a lawful occupation. (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601].) The right to sue for negligently inflicted injuries has been specifically held *not* to constitute a fundamental right. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 862, fn. 2 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) ■ Thus, we apply "the familiar rational-relationship test, which is used to test the constitutionality of economic regulations." (*American Bank & Trust Co.* v. *Community Hospital* (1983) 33 Cal.3d 674, 686 [190 Cal.Rptr. 371, 660 P.2d 829].)

Code of Civil Procedure section 340.5 was amended to its present form in 1975 as part of the Medical Injury Compensation Reform Act (MICRA). MICRA was enacted after the Legislature had been called by the Governor into a second extraordinary session to deal with the problem of the rising costs to health care providers of medical malpractice insurance, a problem which threatened to endanger the health of the general public. (Proclamation by the Governor, Stats. 1975, Second Ex. Sess. 1975-1976, p. 3947.) The Legislature responded by enacting MICRA. In so doing it stated: "The Legislature finds and declares that there is a major health care crisis in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system, severe hardships for the medically indigent, a denial of access for the economically marginal, and depletion of physicians such as to substantially worsen the quality of health care available to citizens of this state." (Preamble to MICRA, Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007.) As part of an attempt to control insurance costs, the Legislature changed the statute of limitations applicable to minors in malpractice suits directed against health care providers. The Legislature's obvious purpose was to control malpractice insurance costs by shortening the time during which a health care provider and the provider's insurer would face the risk of a lawsuit. In so doing, they classified and treated those minors who are victims of tortfeasors who are health care providers differently than other minor victims of tortfeasors. The purpose of this classification is rationally related to the state's legitimate purpose, the control of medical costs in order to provide better medical care for all citizens of the State of California. We conclude that plaintiff's challenge to Code of Civil Procedure section 340.5 on equal protection grounds is not meritorious. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ Deborah also challenges the statute by claiming it denies her right to due process under the law. "As a matter of constitutional law, a statute of limitation is remedial in nature and does not destroy fundamental rights. [With exceptions not here pertinent,] [t]he enactment is always a legislative prerogative and does not violate constitutional guarantees." (*In re Marriage of B.* (1981) 124

Cal.App.3d 524, 532 [177 Cal.Rptr. 429].) "[T]he Legislature may restrict the period of limitations on a pending claim so long as the plaintiff is given 'a reasonable time in which to sue.'" (*Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 437 [186 Cal.Rptr. 228, 651 P.2d 815].)

■ Deborah further alleges that Code of Civil Procedure section 340.5 is unconstitutionally vague and uncertain in its application to minors. While the statute is not a model of clarity, we find it sufficiently certain so that we may interpret it and apply it to the case at bench.

■ The appropriate rules of statutory construction were stated in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citation.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] '[A] construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citations.]"

■ We also note that the words of a statute must be interpreted in light of the principle that a statute is to be construed in a way that will avoid its unconstitutionality. (*San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669].)

We must determine whether (1) the Legislature intended to create for minors a statute of limitations similar to that applicable to adults, incorporating those tolling provisions allowed adults as well as two additional protections made specifically applicable to minors only, or (2) the Legislature intended to create a separate statute of limitations for minors incorporating common law tolling provisions as well as two additional protections. We conclude that the intent of the Legislature was to accomplish the latter.

The first two sentences of Code of Civil Procedure section 340.5 set forth the statute of limitations applicable to adults. An adult must bring suit within three years of the date of injury or one year after he discovers or should have discovered the injury, whichever occurs first. The three-year period is tolled by any of three enumerated occurrences. This portion of the statute does not mention minors.

The third sentence of the statute states that minors shall bring suit "within three years from the date of the alleged wrongful act." The statute is tolled for fraud or collusion between parent or guardian and "defendant's insurer or health care provider," and a minor under the full age of six may bring an action at any time prior to his eighth birthday if this would extend the period during which he may bring suit. The statute does not state that a minor must bring suit within one year of discovery of the alleged malpractice. It does not specifically apply the three tolling provisions applicable to adults (fraud, intentional concealment, or presence of a foreign body having no therapeutic or diagnostic purpose) to minors. Furthermore, it states that the statute begins to run for an adult on the "date of *injury*," but for a minor it begins to run from the "date of the *alleged wrongful act*." "Wrongful act" is not synonymous with "injury" (*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 665 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]); the word "injury" refers to the damaging effect of the alleged wrongful act and not to the act itself (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 656, fn. 11 [135 Cal.Rptr. 75, 557 P.2d 507).

On its face, the statute has some provisions more favorable to adults than to minors. When we consider the long recognized policy of this state favoring the protection of a minor's right to bring suit, we cannot believe the Legislature intended that result. Moreover, such unequal treatment would violate the right of minor victims of malpractice to equal protection under the law.

"Common law" tolling provisions have traditionally been incorporated into statute of limitation provisions. Prior to the enactment of Code of Civil Procedure section 340.5 in 1970, the limitation period for medical malpractice actions was the one-year term applicable to actions for personal injury or death under Code of Civil Procedure section 340, subdivision 3. However, a judicially created tolling rule tolled the commencement of this period until the plaintiff either discovered his injury and its negligent cause or could have discovered the injury and its cause by exercising reasonable diligence. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 96-97 [132 Cal.Rptr. 657, 553 P.2d 1129].) For a minor, the statute of limitations was tolled completely during the period of his minority under Code of Civil Procedure section 352.

Civil Code section 29 was amended in 1941 to limit to a period of six years from date of birth the time during which an action on behalf of a minor for personal injuries sustained prior to or in the course of his birth could be brought. This time period was specifically *not* tolled by operation of Code of Civil Procedure section 352. However, our courts concluded that the six-year period was "extended 'by any legal ground not specifically excluded in the section itself.' [Citation.] And one such legal ground is the common law delayed discovery rule in malpractice cases." (*Segura* v. *Brundage* (1979) 91 Cal.App.3d 19, 27 [153 Cal.Rptr. 777]; *Myers* v. *Stevenson* (1954) 125 Cal.App.2d 399 [270 P.2d

885].) "When the person who is injured is a minor, as here, the parents' knowledge or lack of knowledge is controlling." (*Wozniak* v. *Peninsula Hospital* (1969) 1 Cal.App.3d 716, 723 [82 Cal.Rptr. 84].) "When there is a belated discovery the issue of whether plaintiff exercised reasonable diligence is a question of fact [citation] and where there is a professional relationship, the degree of diligence in ferreting out the negligence for the purpose of the statute of limitations is diminished. [Citation.]" (*Call* v. *Kezirian* (1982) 135 Cal. App.3d 189, 196 [185 Cal.Rptr. 103].)

■ We believe the Legislature intended to enact a separate limitations period for minors, one which would continue the protection of common law tolling provisions during the period of minority while effecting the legislative purpose of controlling health care costs. Minors no longer may bring suit for medical malpractice at any time before the 19th birthday. Suits on behalf of a minor must now be brought within three years of the time of the alleged malpractice, unless the minor's parent or guardian has not discovered, or through the use of reasonable diligence would not be expected to discover, the injury and its negligent cause. The reason for the failure to specifically apply the three enumerated tolling provisions to minors is manifest. The three-year period is tolled for fraud, intentional concealment, and presence of a foreign body having no diagnostic or therapeutic purpose, as well as for other valid circumstances which have prevented discovery of the malpractice by someone exercising reasonable diligence.

■ "In performing professional services for a patient, a physician or surgeon has the duty to have that degree of learning and skill ordinarily possessed by reputable physicians and surgeons, practicing in the same or a similar locality and under similar circumstances.

"It is his further duty to use the care and skill ordinarily exercised in like cases by reputable members of his profession practicing in the same or a similar locality under similar circumstances, and to use reasonable diligence and his best judgment in the exercise of his skill and the application of his learning, in an effort to accomplish the purpose for which he is employed." (BAJI No. 6.00 (6th rev. ed. 1977).)

■ "Mere error of judgment, in the absence of a want of reasonable care and skill in the application of his medical learning to the case presented, will not render a doctor responsible for untoward consequences in the treatment of his patient. . . ." (*Huffman* v. *Lindquist* (1951) 37 Cal.2d 465, 475 [234 P.2d 34, 29 A.L.R.2d 485].) "The ability of a physician, with the aid of hindsight, to look back on his work and decide he should have used a different procedure does not prove he failed in the first place to exercise the skill and care required of a physician under the circumstances . . . ." (*Kilburn* v. *Pineda* (1982) 137

Cal.App.3d 1046, 1049 [187 Cal.Rptr. 548].) To state a cause of action here, Deborah must show that Campbell committed a negligent act or omission amounting to medical malpractice under the principles delineated above and that she did not discover that negligence and could not discover it by exercising reasonable diligence until a time within three years of the date she filed suit.

In her declaration of August 3, 1981,[3] Deborah's mother stated that, from 1965 to 1972, defendant failed to immunize Deborah for mumps. She further stated that Campbell told her that there was no immunization that could safely be given to Deborah because of her existing physical disabilities. She declared, "I learned from my attorney, Samuel Shore, that the representations above referred to, which were made to me were false, and that such falsity was unknown to me until approximately July, 1980." Thus, plaintiff's mother admits that she knew of Campbell's alleged negligent omission (failure to vaccinate) and of the circumstances which led to the omission (his belief that vaccination would be injurious to plaintiff) at least eight years before she filed suit. She states that she did not know his decision amounted to malpractice before July 1980, but she has not stated what facts she relies upon to show that Campbell's decision violated those standards of diligence, care, and skill ordinarily possessed by members of the medical profession practicing in the same or similar locality and under similar circumstances. However, it is possible that she may be able to do so.

 "It is axiomatic that if there is a reasonable possibility that a defect in the complaint can be cured by amendment or that the pleading liberally construed can state a cause of action, a demurrer should not be sustained without leave to amend." (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].) In the instant case, we believe the plaintiff should be given an opportunity to correct the defects set forth above.

The judgment is reversed with instructions to permit plaintiff to file an amended complaint.

Ashby, J., and Hastings, J., concurred.

---

[3]The declaration was attached to plaintiff's motion for reconsideration which was submitted to the trial court after the demurrer to the second amended complaint was sustained without leave to amend.