[Nos. F004264, F004505. Fifth Dist. Sept. 3, 1985.]

SLONA F. WALLACE, Plaintiff and Appellant, v.
RICHARD W. HIBNER et al., Defendants and Respondents.

COUNSEL

Kronick, Moskovitz, Tiedemann & Girard and James F. Geary for Plaintiff and Appellant.

Stammer, McKnight, Barnum & Bailey, Craig W. Mortensen, McCormick, Barstow, Sheppard, Wayte & Carruth, Mario L. Beltramo, Jr., and John A. Drolshagen for Defendants and Respondents.

OPINION

**RITCHEY, J.—**

### STATEMENT OF THE CASE

Slona F. Wallace (appellant) filed a medical malpractice action against Richard W. Hibner, M.D., and St. Agnes Medical Center (respondents) on January 28, 1984. Dr. Hibner filed an affirmative defense and St. Agnes filed a demurrer claiming the action was barred by Code of Civil Procedure section 340.5.[1] Subsequently, Dr. Hibner made a motion for judgment on the pleadings based on the statute of limitations.

The trial court dismissed the complaint against St. Agnes and granted judgment on the pleadings in favor of Dr. Hibner. Appellant appeals from this judgment.[2]

### STATEMENT OF THE FACTS

On August 20, 1970, appellant consulted Dr. Hibner at St. Agnes' emergency room to obtain treatment for a puncture wound caused by a sewing needle that was traumatically embedded in her foot. Dr. Hibner inadvertently failed to remove the entire needle during the operation. Appellant did not discover this fact until May 1983.

### DISCUSSION

*Does a sewing needle fragment left in a patient's foot after an operation for its removal constitute a "foreign body" within section 340.5?*

Appellant argues that under the plain meaning of the statute, a "foreign body" includes any object negligently left in the body, i.e., glass, sewing

[1]All further statutory references are to the Code of Civil Procedure.
[2]Upon stipulation of the parties, the cases have been consolidated on appeal.

needles, slivers of wood, and medical instruments. Appellant then attempts to enlarge this definition by citing dictum from an old case which stated there was "[no] difference in principle between leaving in the patient's body pieces of broken roots of teeth which the surgeon had undertaken to remove and a sponge or drainage tube which had served its purpose and should have been removed." (*Ehlen* v. *Burrows* (1942) 51 Cal.App.2d 141, 145-146 [124 P.2d 82].)

Respondents counter that the statute's "foreign body" exception applies *only* to objects placed in the patient's body by the doctor or hospital employee which were not removed during the operation (i.e., sponges, clamps, drainage tubes). Respondents assert that this interpretation is supported by the statute's legislative intent of limiting the skyrocketing costs of medical malpractice insurance. (*Kite* v. *Campbell* (1983) 142 Cal.App.3d 793, 800 [191 Cal.Rptr. 363].) Respondents' definition is also supported by New York case law.

The trial court dismissed appellant's action and stated it did not "believe there was any [legislative] intent that the foreign body should include something that the patient walks in with in his body." We agree with the trial court and affirm the judgment.

A. *Statutory interpretation.*

It is well established that the applicability of a statute to undisputed facts is a question of law and this court is not bound by the lower court's conclusion. (See, e.g., *Neal* v. *State of California* (1960) 55 Cal.2d 11, 17 [9 Cal.Rptr. 607, 357 P.2d 839].) When interpreting a statute, a court must ascertain legislative intent so as to effectuate a law's purpose. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672]; *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658 [147 Cal.Rptr. 359, 580 P.2d 1155].) Legislative intent will be determined so far as possible from the language of the statutes, read as a whole, and "if the words of an enactment, given their ordinary and proper meaning, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain the legislative intent." (58 Cal.Jur.3d, Statutes, § 102, p. 472.)

"In the construction of a statute . . ., the office of the Judge is simply to ascertain and declare what is . . . contained therein, not to insert what has been omitted, or to omit what has been inserted; . . ." (§ 1858. See also *Pepper* v. *Board of Directors* (1958) 162 Cal.App.2d 1, 4-5 [327 P.2d 928].) However, courts will not infer a legislative intent that is capricious or unconstitutional if the statutory language admits of an alternative

interpretation which would serve the statutory policy and render application of law reasonable and just. (*Estate of Yush* (1970) 8 Cal.App.3d 251, 255 [87 Cal.Rptr. 222].) ■ An absurd and unjust result will not be ascribed to the Legislature. (*Brown* v. *Huntington Beach etc. High Sch. Dist.* (1971) 15 Cal.App.3d 640, 646 [93 Cal.Rptr. 417].)

### B. *Discussion.*

Prior to 1936, California courts applied a strict statute of limitations in medical negligence cases. Under former section 340, subdivision 3, a malpractice action was barred if not brought within one year of the date of injury. In 1936, our Supreme Court initiated the "discovery rule" exception in order to mitigate the harsh effect of this statute. (*Huysman* v. *Kirsch* (1936) 6 Cal.2d 302 [57 P.2d 908].) In *Huysman,* a doctor negligently failed to remove a drainage tube used during the operation. Although this case involved a "foreign object," the court did not expressly define it.

In 1970, section 340.5 was enacted, providing a separate statute of limitations for medical malpractice actions. It extended the period of limitations to an absolute four-year period, or a one-year discovery period, whichever occurred first. The four-year limitation was tolled for the health care provider's failure to disclose any act, error, or omission which was, or through exercise of reasonable care, should have been known to him. (See *Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 96-97 [132 Cal.Rptr. 657, 553 P.2d 1129].) In *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 432 [186 Cal.Rptr. 228, 651 P.2d 815], our Supreme Court explained: "Section 340 prescribes a one-year limitations period. Prior to the enactment of section 340.5 in 1970, the limitations period for all medical malpractice actions was the one-year term provided by section 340, subdivision 3, which applies generally to actions for personal injury or death. It was established, though, that the limitations period did not commence until the plaintiff actually discovered his injury and its negligent cause or could, in the exercise of reasonable diligence, have discovered them. Thus, commencement of the running of the statute might be deferred indefinitely. [Citations omitted.]

"Repeated efforts to modify this 'open-ended' discovery doctrine culminated in the enactment in 1970 of Code of Civil Procedure section 340.5, which governs actions based on 'professional negligence' by 'health care provider[s].' As enacted, the statute retained the former one-year limitations period, but circumscribed it with an outside period of four years from the date of plaintiff's 'injury,' irrespective of whether its negligent cause had or should have been discovered."

Despite this change in 1970, the concern over ever-increasing costs to procure insurance coverage for doctors and hospitals rose to new highs in

the mid-1970's. In 1975, the Governor of California called an extraordinary session of the Legislature to deal directly with this issue. The Governor proclaimed that the rising costs of malpractice litigation to the health care field endangered the public's health. (*Kite* v. *Campbell, supra,* 142 Cal.App.3d at p. 800; see generally, Note, *California Code of Civil Procedure Section 340.5: The Discovery Rule Codified?* (1983) 13 Sw.U.L.Rev. 759.) The Legislature reacted by amending section 340.5 to further shorten the outside period of limitation. The statute presently states in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) *the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . .*" (Italics added.)

■ The question this court must resolve is whether a needle fragment left in a patient's foot after an operation for its removal constitutes a foreign body within the meaning of section 340.5. Our research has revealed that no California case has specifically addressed this issue.[3]

We believe that the Legislature intended the "foreign body" exception to apply only to medically inserted objects that have no therapeutic or diagnostic purpose which are left in the patient's body.[4] In *Melnyk* v. *Cleveland Clinic* (1972) 32 Ohio St.2d 198 [61 Ohio Ops.2d 430, 290 N.E.2d 916, 917, 70 A.L.R.3d 1], the Ohio Supreme Court noted: "[I]t is difficult, if not impossible, to imagine a defense to the act charged. To carelessly leave a large and obvious metallic forceps and a nonabsorbent sponge in a surgical patient's body is negligence as a matter of law, and the proof thereof is generally unsusceptible to speculation or error. The relationship between the utterly helpless surgical patient and his surgeon, during surgery, is such that the latter must be held to have assumed the responsibility for the re-

---

[3]*Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753 [199 Cal.Rptr. 816] held that silicon in an intrabreast silicon injection, though it perhaps constitutes a foreign body, is not entitled to the "foreign body" exception because it was introduced for therapeutic purposes. Although this case dealt with a foreign object, it does not resolve the issue in our case.

[4]Our review of cases from other jurisdictions reveals that the usual fact situation presented concerns negligently left gauze, sponges, needles, surgical tools, etc., which are discovered later due to a related or unrelated illness. (See Annot., When Statute of Limitations Commences to Run Against Malpractice Action Based on Leaving Foreign Substance in Patient's Body (1976) 70 A.L.R.3d 7. See also *Johnson* v. *St. Patrick's Hospital* (1966) 148 Mont. 125 [417 P.2d 469, 470].)

moval of such articles, excepting only those which are intentionally left there for sound medical reasons. Furthermore, as problems of proof and defense dwindle, so does the persuasiveness of the 'stale claims' reasoning." (Fns. omitted. See also *Fernandi* v. *Strully* (1961) 35 N.J. 434, 450 [173 A.2d 277].)

The definition of "foreign object" that we have declared today[5] is similar to the one adopted by the New York courts in interpreting their similar statute of limitations.[6]

The issue of what constitutes a "foreign object" under the New York statute of limitations was decided in *Garrett* v. *Brooklyn Hosp.* (1984) 99 App.Div.2d 541 [471 N.Y.S.2d 621]. There, in facts analogous to our case, the plaintiff underwent an operation in 1964 to remove tissue in an area which had been lacerated when she fell on glass. A pathology report was issued which stated that no "foreign body" was identified. The plaintiff's mother was informed that the operation had been successful.

In 1980 an X-ray revealed a "foreign body" in the area of the plaintiff's operative scar. A piece of glass subsequently had to be surgically removed. The plaintiff instituted a medical malpractice action against the hospital. In upholding the trial court's dismissal of the action based on the statute of limitations, the appellate court held that "foreign object" applied to medically introduced objects left in the patient's body and *not* to objects for which the care and treatment was initially rendered. The appellate court stated: "[T]here is, under the facts of this case, no basis for the invocation of the discovery rule or 'foreign object' exception. Plaintiff entered defendant's health care facility with a traumatically introduced glass fragment already embedded in her right hand. Thus, the glass fragment retrieved in 1980 was not introduced into plaintiff's body as the result of any affirmative act on the part of one of defendant's employees. Rather, the failure to detect and remove the fragment was 'founded exclusively upon diagnostic judgment or discretion' [citations omitted]." (*Garrett* v. *Brooklyn Hosp.*, *supra*,

---

[5]In *Roybal* v. *White* (1963) 72 N.M. 285 [383 P.2d 250, 252], the New Mexico Supreme Court suggested that under California law a foreign body pertains to "all appliances used in the operation [that] have [not] been removed."

[6]The statute of limitations for medical negligence in New York (N. Y. Civ. Prac. Law, § 214-a (McKinney 1984-1985 pocket supp.)), provides in relevant part: "An action for medical malpractice must be commenced within two years and six months of the act, omission or failure complained of . . .; provided, however, that *where the action is based upon the discovery of a foreign object* in the body of the patient, the *action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery*, whichever is earlier. . . . For the purpose of this section the term *'foreign object' shall not include a chemical compound, fixation device or prosthetic aid or device.*" (Italics added.)

471 N.Y.S.2d at p. 622. See also *Garrett* v. *Brooklyn Hosp.* (1982) 115 Misc.2d 933 [454 N.Y.S.2d 637, 639].)

The appellate court in *Garrett* affirmed the holding and rationale expressed in the comprehensive opinion rendered by the lower special term court. (*Garrett* v. *Brooklyn Hosp.*, *supra*, 454 N.Y.S.2d 637.) Both opinions in *Garrett* referred to *Flanagan* v. *Mount Eden General Hospital* (1969) 24 N.Y.2d 427 [301 N.Y.S.2d 23, 248 N.E.2d 871] in which the "foreign object" exception was adopted and later codified in New York Civil Practice Law section 214-a. The special term *Garrett* court reviewed *Flanagan*'s decision to adopt the "foreign object" rule followed in nine other jurisdictions, all of which had limited the "foreign object" exception to medically introduced objects. The special term *Garrett* court stated: "The *Flanagan* case involved the insertion of surgical clamps in a patient's body. In placing New York among jurisdictions that allow a date of discovery rule for foreign objects, the court decided to follow nine other jurisdictions that allowed the rule when *medically* [italics in original] placed objects were placed in patients' bodies, e.g., sponges, hemostat, needles, wing-nut [citation].

*"The rule has been continually limited to medically inserted objects and not objects plaintiffs already had in them when they presented themselves to defendants* [italics added] [citation omitted]." (*Garrett* v. *Brooklyn Hosp.*, *supra*, 454 N.Y.S.2d at p. 639.)

Appellant claims that we should apply the plain meaning rule to interpret "foreign body" because the statute does not distinguish between a foreign body introduced during medical treatment from a foreign body introduced by other means which creates a necessity for the medical treatment. Although this argument appears persuasive, its inherent weakness is evident upon close analysis. For instance, if a doctor operated and inadvertently left a portion of a tumor within patient A, and A discovered this tumor 10 years later, under the "plain meaning" interpretation A's claim would be barred. However, if a doctor operated and inadvertently failed to entirely remove a traumatically inserted needle in B's foot, 10 years later B's action would be allowed. Thus, two very different statutes of limitation would be made applicable to medical treatment involving, in principle, the same medical diagnostic and judgment risks. To accept appellant's definition and permit B's action and not A's would be an absurd, unfair, and unjust result. (*Estate of Yush*, *supra*, 8 Cal.App.3d at p. 255; *Brown* v. *Huntington Beach etc. High Sch. Dist.*, *supra*, 15 Cal.App.3d at p. 646.) We will not ascribe such an absurd intent upon the Legislature.

In an attempt to avoid this result, appellant tries to expand this definition by citing *Ehlen* v. *Burrows*, *supra*, 51 Cal.App.2d 141 for the proposition

that the "foreign body" exception may also apply to "natural organs" which a doctor inadvertently leaves behind. In *Ehlen,* a physician who set out to remove some teeth inadvertently left behind some roots. The court held that the discovery doctrine was applicable to the commencement of the statute of limitations. The court, in dictum, stated that there is no difference in principle between plaintiff's failure to discover broken teeth roots left in her jaw and another plaintiff's failure to discover a surgical drainage tube in her abdomen (*Huysman* v. *Kirsch, supra,* 6 Cal.2d 302). The court stated: "As it does not appear on the face of the complaint that plaintiff discovered, or by the use of reasonable diligence should have discovered, the presence of the broken roots at a date more than one year prior to the filing of the complaint, the plea of the statute is not available to defendant by demurrer." (*Ehlen* v. *Burrows, supra,* 51 Cal.App.2d at p. 146.)

*Ehlen* is not authority for expanding the "foreign body" definition as requested by appellant. First, it is quite clear that a tooth or tumor naturally grows within a body and is not a foreign body. Second, *Ehlen* stands for the proposition of applying the discovery rule before the Legislature's 1970 amendments to section 340.5. The references to broken teeth and a drainage tube are dictum. In *People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241], our Supreme Court stated that cases "are not authority for propositions not there considered." Third, appellant's definition runs contrary to the legislative intent of section 340.5.

Moreover, the exceptions to section 340.5, "(1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person," must be construed in context. The first two categories deal with affirmative acts by the health care provider rather than mere omission or exercise of poor judgment. Also, by qualifying "foreign body" with the phrase "which has no therapeutic or diagnostic purpose or effect," the conclusion is that the Legislature intended "foreign body" to mean objects which are surgically inserted or attached and allowed to remain. Thus, where a patient would have no reason whatsoever to suspect negligence, as when the practitioner commits fraud, intentional concealment of facts or when a nondiagnostic or nontherapeutic substance is placed in the body and left behind, the statute is tolled.

We conclude that the trial court correctly dismissed appellant's action for medical malpractice because the action is time-barred by section 340.5.[7]

---

[7]Appellant also argues that the trial court may have erroneously based its dismissal in favor of Dr. Hibner on his contention that appellant's complaint did not set forth facts sufficient to constitute a cause of action. Upon review of the record, we believe it is clear that the dismissal was based upon the trial court's interpretation of section 340.5. Therefore, we reject appellant's contention.

The judgment is affirmed.

Woolpert, Acting P. J., and Best, J., concurred.