[No. F009253. Fifth Dist. Sept. 6, 1988.]

COUNTY OF FRESNO, Plaintiff and Appellant, v.
CLOVIS UNIFIED SCHOOL DISTRICT, Defendant and
Respondent.

418

COUNSEL

Max E. Robinson, County Counsel, and J. Wesley Merritt, Chief Deputy County Counsel, for Plaintiff and Appellant.

Finkle, Davenport & Barsamian, Finkle & Stroup and Harry Finkle for Defendant and Respondent.

OPINION

**MARTIN, Acting P. J.**—Plaintiff county appeals from a summary judgment in favor of defendant district arising from an unsuccessful trustee recall effort.

### FACTS

The circumstances of the instant case are set forth in the plaintiff's statement of undisputed facts filed October 1, 1986, and defendant's statement of undisputed and disputed material facts filed June 18, 1987: "On June 15, 1984, proceedings were commenced for the recall of certain members of the governing Board of Trustees of the Clovis Unified School District by the

service, filing, and publication of a Notice of Intention to Circulate a Recall Petition pursuant to California Elections Code Section 27000 et seq. Said notice named John E. Coffman, Paul C. Anderson, John W. Davis, and Gerald E. Walker.

"On June 28, 1984, the proponents of the recall filed two blank copies of the recall petition with the Fresno County Clerk, Elections Division, pursuant to California Elections Code Section 27031.5.

"On July 6, 1984, the Fresno County Clerk, Elections Division, notified the proponents of the recall that the proposed form and wording of the recall petition met the requirements of the California Elections Code.

"On November 5, 1984, the proponents of the recall election filed with the Fresno County Clerk, Elections Division, the recall petition with signatures affixed to the petition pursuant to California Elections Code Section 27210. From that date and through December 5, 1984, the Fresno County Clerk, Elections Division, examined the recall petition, and from the records of registration ascertained that the petition was not signed by the requisite number of voters, and on December 5, 1984, certified the petition as insufficient pursuant to California Elections Code section 27214.

"On or about May 8, 1985, the County of Fresno, through its County Treasurer, submitted an invoice to Clovis Unified School District charging the District $23,134.95 to cover expenditures by the Fresno County Clerk, Elections Division, for staff salaries and computer services in processing the above-described recall petition.

"On or about June 7, 1985, the County of Fresno, through its County Treasurer, submitted to the Clovis Unified School District a second copy of the invoice described in paragraph 6 herein together with a notice that the invoice was past due for payment.

"The Clovis Unified School District has refused and continues to refuse to pay to the County of Fresno the amount of $23,134.95 to cover the costs incurred by the Fresno County Clerk, Elections Division, in processing the recall petition described herein. Representatives of the Clovis Unified School District have represented that these costs are a County charge rather than a school district charge.

"·   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

". . . The services for which recovery is sought from the Clovis Unified School District were performed by the Fresno County Clerk's Office as official duties as ex officio Registrar of Voters as mandated by law. . . .

". . . No recall election was ordered (called) or held in this case.

"It is disputed that Plaintiff rendered services in the amount, at the cost and for the account of Defendant in this matter to justify the claim of $23,143.95 [*sic*], the basis for dispute being as follows:

"a) Plaintiff does not allege that the amount is undisputed;

"b) Partial discovery did not provide a sufficient basis to verify the charges, as time sheets and work papers were not available and the parties agreed to further discovery on this question. . . ."

On August 6, 1986, plaintiff county filed a complaint for money, declaratory relief, and a petition for writ of mandamus in superior court. On October 1, 1986, plaintiff county filed a notice of motion for summary judgment and for summary adjudication of issues (Code Civ. Proc., § 437c). On June 19, 1987, defendant district filed a revised pleading opposing plaintiff's motion for summary judgment and supporting defendant's cross-motion for summary judgment. On June 29, 1987, the superior court conducted a hearing on the cross-motions for summary judgment.

On July 24, 1987, the court filed a ruling on cross-motions for summary judgment, stating in relevant part: "[E]ach side has waived the other's compliance with the formal niceties of C.C.P. [section] 437c and has asked that I rule on the question presented by these cross-motions, which is: 'In an unsuccessful recall effort to recall school trustees, where a county clerk performs services including checking signatures on the recall petition and certifying the petition as insufficient, are the costs incurred by the county clerk a county charge or a school district charge?'

"There is no Legislative 'history' extant which treats . . . the issues raised by the cross-motions.

". . . . . . . . . . . . . . . . . . . . .

". . . [Elections Code section 10000], which imposes on the county treasury the burden of all costs 'incurred in the preparation for and conduct of elections,' is a 1961 enactment, and to the extent it is not displaced by a more recent and explicit rule, it must be accorded precedence.

"Chapter 3 of Article 8 of the Education Code (which became the law in 1976), particularly Sections 5420 et seq., directly addresses the topic of school district recall election costs. It is thus controlling as far as it goes. Where it does not reach, [Elections Code section 10000] governs.

"Education Code [section] 5424 provides: 'The cost of any recall election shall be borne by the district in which the recall election is held and paid from district funds.'

"I have declined to adopt the reasoning of the Attorney General's Office (cf., *Moore v. Panish* (1982) 32 Cal.3d 535, 544), and instead have concluded that section 5424 is not applicable to the costs of services performed by the County Clerk in advance of the 'call.'

"The Attorney General's opinion turns upon an expansive interpretation of the word 'election' in [section] 5424 so as to include services antecedent to the call. However, it seems to me that that position neglects the plain meaning of the precise wording of [Education Code section] 5424, overlooks the content of related and companion statutes, and reaches a conclusion about the Legislature's 'intent' which is contrary to the direct expression of the lawmakers' will exposed by the words of the pertinent statutes.

"Education Code [section] 5424 unmistakenly [*sic*] refers to the costs of an *election* that is *held*; it says nothing about costs expended in preparation for an election, whether held or not. That the Legislature was cognizant of the distinction is manifested by reference to other related statutes, such as Elections Code [section 10000] and Education Code [section] 5303, each of which rather clearly demarcates between the 'preparation for' and the 'holding of' elections. . . .

"Because [Education Code section] 5424 does not apply to the costs here in issue, Elections Code [section 10000], which imposes the burden of pre-call costs on the county, is controlling." (Fns. omitted.)

On August 19, 1987, the court filed an order granting defendant's cross-motion for summary judgment and denying plaintiff's motion for summary judgment and summary adjudication of issues. On the same date, the superior court filed its judgment on defendant's cross-motion.

On September 10, 1987, plaintiff county filed a timely notice of appeal.

### Discussion

#### Are Preelection Costs Incurred by the County Clerk in an Unsuccessful Effort to Require the Holding of a Recall Election of School District Trustees a School District Charge?

School district elections are governed by the Elections Code except as otherwise provided in the Education Code. (Ed. Code, §§ 5300, 5301.) The

county clerk or the registrar of voters, if such office has been established in the county, shall perform the duties incident to the preparation for, and holding of, all district elections. (Ed. Code, § 5303.) Recall is the power of the electors to remove an elective officer. (Cal. Const., art. II, § 13; see generally The Law of Politics: Federal & California Fair Political Practices & Election Laws (Cont.Ed.Bar 1977) §§ 6.1-6.52, pp. 369-402.) The Legislature shall provide for recall of local officers. (Cal. Const., art. II, § 19.) Prior to 1977, recall elections in school districts were governed by former Education Code sections 5050 through 5076. (Stats. 1976, ch. 1010, § 2, pp. 2513-2517.) The Legislature repealed these provisions effective April 30, 1977. (Stats. 1977, ch. 36, § 548, p. 382.) The Elections Code now governs the recall of elective officers of school districts. (Elec. Code, § 27000.)

Education Code section 5420 states: "The cost of any school district . . . election may include, but need not be limited to:

"(a) Compensation of precinct election officers.

"(b) Publication of notices.

"(c) The cost of printing official ballots, sample ballots, indexes, arguments, statements, official notices, and card notices.

"(d) Mailing charges for card notices, arguments, recommendations, statements, and sample ballots.

"(e) Forms for rosters, tally sheets, certificates, envelopes, declaration of results forms, and legal forms required for bond elections.

"(f) Precinct maps.

"(g) The actual cost of supplies such as flags, ballot boxes, chairs and tables, booths, ink pads and stamps, and pencils; provided, that if any such can be borrowed from any state or county office, no charge for rental shall be included in the cost of elections."

Education Code section 5421 states: "The cost of any election held within a single district shall be borne by the entire district, and shall be paid out of its funds. Election costs shall be determined by the county clerk or registrar of voters and approved by the county board of supervisors."

Education Code section 5424 states: "The cost of any recall election shall be borne by the district in which the recall election is held and paid from district funds."

Elections Code section 10000 states: "All expenses, authorized and necessarily incurred in the preparation for and conduct of elections as provided in this code, shall be paid from the several county treasuries, except that when an election is called by the governing body of a city, the expenses shall be paid from the treasury of the city. All payments shall be made in the same manner as other county or city expenditures are made. The clerk, in providing the materials required by this division, need not utilize the services of the county or city purchasing agent."

In the instant case, plaintiff County of Fresno adopts California Attorney General's Opinion No. 85-906 as its opening argument on appeal.[1] The Attorney General concluded in an unsuccessful recall effort, where a county clerk performs services including checking signatures on the recall petition and certifying the petition as insufficient, the costs incurred by the clerk are a school district charge. The Attorney General reasoned: "In the context of recall proceedings, two plausible meanings of the word 'election' as used in sections 5420, 5421 and 5424 of the Education Code appear to emerge. The first is that the word 'election' refers only to that part of the recall process which deals with the actual election commencing in point of time with the certification of the sufficiency of the recall petition. Such a certification is the statutory condition precedent to calling a recall election. The second is that the word 'election' is meant to encompass the entire recall proceedings. It would therefore include preliminary matters attributable to the proceedings such as the checking of signatures on the recall petition by the county clerk.

"Our task is to 'ascertain the legislative intent so as to effectuate the purpose of the law.' (Moore v. Panish (1982) 32 Cal.3d 535, 541.) The basic purpose of sections 5420, 5421 and 5424 of the Education Code is to charge school districts with costs *they* generate because of elections. Given the two choices expressed above, we believe the second construction best advances that purpose. We can discern no reason why the Legislature would have distinguished between costs incurred by the county *for the benefit of a school district* after the certification of a recall petition and those incurred by the county *for the benefit of a school district* before certification of a recall petition. But for the recall proceedings, neither category of costs would have been incurred. Clearly the Legislature did not make reimbursement for costs contingent upon a successful recall election. Why then would the Legislature have intended to require the county, as opposed to the school district, to pay preliminary costs of a recall proceeding merely because the recall effort failed at the petition stage instead of the election stage?

---

[1] The Honorable Floyd R. B. Viau, former Fresno County Counsel, requested the opinion on a county clerk's services in an unsuccessful school recall effort. (69 Ops.Cal.Atty.Gen. 46 (1986).)

"We would also note that section 10000 of the Elections Code . . . relied upon as authority for the *county* being charged with such preliminary costs, does not make such a distinction. . . . Accordingly, this section as written additionally supports the concept that the Legislature intends that the entity to be charged with election costs is to pay for *all* costs whether the entity is the county, a city or a school district." (69 Ops.Cal.Atty.Gen. 46, 49-50, *supra*.)

Plaintiff county also relies on *County of San Mateo* v. *Belmont County Water Dist.* (1978) 83 Cal.App.3d 485 [147 Cal.Rptr. 902]. In *County of San Mateo,* voters in the Belmont County Water District petitioned the county board of supervisors to establish the district as a subsidiary of the City of Belmont. The board established the subsidiary district subject to confirmation by a majority of the resident voters at a special election. At the special election, the voters failed to confirm the board's action by the required majority. The county then presented the district a bill for $5,498.15 for electoral services rendered by the county clerk. The district refused to pay the bill, the county obtained summary judgment in its favor, and the First District Court of Appeal affirmed the summary judgment. The First District found two debatably relevant provisions—Elections Code section 10000 and Elections Code section 23524. The district relied upon the former section and the county relied upon the latter. Elections Code section 23524 stated: "Each district involved in a general district election in an affected county shall reimburse such county for the actual costs incurred by the county clerk thereof in conducting the general district election for that district. The county clerk of the affected county shall determine the amount due from each such district and shall bill each such district accordingly." Government Code section 56100 provided special elections called within a city or resident-voter district would be governed by the general and local elections provisions of the Elections Code. The Government Code section further provided the local elections provisions would control in the event of any inconsistency between those provisions and general elections provisions. The First District held Elections Code section 23524 was a local elections provision and therefore controlled over the inconsistent Elections Code section 10000. The district argued it had not requested the election and therefore the election could not reasonably be deemed a district election. The First District pointed out Elections Code section 23524 is not limited to elections called "by" a district or its board. Rather, it refers to each district "involved" in a general district election. Finally, the court noted the costs of such an election by, or concerning, a lesser public entity such as a water district or a city appear traditionally to have been a charge against the local entity and not the county. Even where a single election concerns the affairs of both the county and a local district, it is held by executive authority of great weight that the costs shall be shared by the two

in some equitable manner. In such a situation, the apportionment of the costs of the respective elections should be fair and equitable.

The trial court held in the instant case: "Education Code [section] 5424 unmistakenly [*sic*] refers to the costs of an *election* that's *held*; it says nothing about costs expended in preparation for an election, whether held or not. That the Legislature was cognizant of the distinction is manifest by reference to other related statutes, such as [Elections Code section 10000] and [Education Code section 5303], each of which rather clearly demarcates between the 'preparation for' and the 'holding of' elections. In fact, although [Education Code section 5303], promulgated as a part of the same act at the same time as [section 5424] (Stats. 1976), assigns to the County Clerk the obligation to 'perform the duties incident to the *preparation for, and holding of,* all district elections,' that particular phraseology was not carried over into [section 5424] or its sister statutes.

"· · · · · · · · · · · · · · · · · · ·

". . . The Attorney General asks, in the context of [Education Code section 5420 et seq.], 'Why . . . would the Legislature have intended to require the county, as opposed to a school district, to pay preliminary costs of a recall proceeding merely because the recall effort failed at the petition stage instead of the election stage?' The complete answer to the question is 'Because it chose to do so.' In [Elections Code section 10000], the Legislature did place such a requirement on the County with respect to abortive attempts to call a municipal recall election; it had a perfect right to do the same with respect to proposed school district elections. The source of the law is authority, not wisdom. . . . [¶] Because [Education Code section 5424] does not apply to the costs here in issue, [Elections Code section 10000], which imposes the burden of pre-call costs on the county, is controlling."

■ It is well established the applicability of a statute to undisputed facts is a question of law and a reviewing court is not bound by the trial court's conclusion. (*Wallace* v. *Hibner* (1985) 171 Cal.App.3d 1042, 1045 [217 Cal.Rptr. 748].) ■ The fundamental rule of statutory construction is that the court should ascertain the legislative intent so as to effectuate the purpose of the law. To this end, every statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect. (*Moore* v. *Panish* (1982) 32 Cal.3d 535, 541 [186 Cal.Rptr. 475, 652 P.2d 32].) Legislative intent will be determined so far as possible from the language of the statutes, read as a whole. If the words of an enactment, given their ordinary and proper meaning, are reasonably free from ambiguity and uncertainty, the court will look no further

to ascertain the legislative intent. In the construction of a statute, the office of the judge is simply to ascertain and declare what is contained therein, not to insert what has been omitted, or to omit what has been inserted. However, courts will not infer a legislative intent that is capricious or unconstitutional if the statutory language admits of an alternative interpretation which would serve the statutory policy and render application of law reasonable and just. An absurd and unjust result will not be ascribed to the Legislature. (*Wallace* v. *Hibner, supra,* 171 Cal.App.3d 1042, 1045-1046.)

■ The trial court's conclusion is well taken in light of the foregoing standards of statutory interpretation. Under Elections Code section 10000, the county is obligated not only for expenses incurred in the conduct of an election held but also for the expenses incurred in the preparation for such an election. No election was held in the instant case. However, there was "preparation" for a possible election pursuant to the recall provisions of the Elections Code. The only specific statute imposing charges on school districts for costs of recall elections is Education Code section 5424. That section provides the costs of any recall election shall be borne by the district in which the recall election is held and paid from district funds.

Defendant district argues companion code sections support this "plain meaning" of Education Code section 5424. California Education Code section 5420 lists various types of election costs chargeable to school districts. Although the statutory list is not inclusive, the types of costs listed in section 5420 arise only after an election is called. On the other hand, plaintiff contends ■ Attorney General's Opinion No. 85-906 compels reversal here. Although opinions of the Attorney General are entitled to great weight, those opinions are not controlling as to the meaning of a constitutional provision or statute. (*Moore* v. *Panish, supra,* 32 Cal.3d 535, 544; *Smith* v. *Municipal Court* (1959) 167 Cal.App.2d 534, 539 [334 P.2d 931].) ■ An administrative interpretation or practical construction by officials who are required to administer a statute is also entitled to great weight. However, it is the duty of the court, when such a question of law is properly presented, to state the true meaning of the statute even though this requires the overthrow of an earlier administrative construction. (*Wilcox* v. *Enstad* (1981) 122 Cal.App.3d 641, 652-653 [176 Cal.Rptr. 560].)

■ Defendant district contends two cases have interpreted and applied Elections Code section 10000 consistent with its position here. In *County of Contra Costa* v. *East Bay Municipal Util. Dist.* (1964) 229 Cal.App.2d 556 [40 Cal.Rptr. 495], defendant utility district and codefendant transit district called and ordered four specified district elections over a three-year period. Plaintiff county consolidated the district elections with statewide general and primary elections. The county conducted the elections and billed each

district for the purported consolidation expenses. The districts refused to pay and the trial court ordered each to pay its share of the expenses pursuant to Elections Code section 23311, subdivision (c). The districts appealed, contending there was no express legislative mandate directing them to share in the expense of consolidated elections. The First District Court of Appeal agreed in part and reversed. Elections Code section 23311 stated: "Except as otherwise provided in this chapter, when elections are consolidated, the governing body ordering consolidation may, in the territory affected thereby, provide for: [¶] (a) The appointment of precinct boards. [¶] (b) The formation of precincts for such elections. [¶] (c) The expenses of the election."

Pursuant to that statute, the county board of supervisors was empowered to require the bodies calling the consolidated election to pay a proportionate share of the reasonable expenses. The statute did not make it mandatory upon the board of supervisors to compel the districts to pay any part of such expenses. The First District held the general election law applicable to elections called by municipal utility and transit districts. When such elections are consolidated with statewide elections, the county must bear the entire cost of such consolidated election under Elections Code section 10000 unless the county provides the transit or utility district pay its reasonable share of election costs in its order of consolidation. (Elec. Code, § 23311.) The districts pointed out there was no express legislative direction for the sharing of consolidated election expenses. Nevertheless, the First District observed the consolidation provisions of the Elections Code, when harmonized with the Public Utilities Code, indicated a legislative intent that there be a sharing of such expenses. The court reversed the judgment with directions to the trial court to reopen the cause and determine whether the consolidation orders provided for sharing of consolidated election expenses.

In *City of Oakland v. Oakland etc. Sch. Dist.* (1956) 138 Cal.App.2d 406 [291 P.2d 1001], the school district appealed from an order requiring it to pay the city its pro rata share of costs of a 1953 municipal election. There were 16 city offices and propositions and 5 school director offices voted upon. The city paid the entire cost of the election and then demanded reimbursement from the district for a pro rata share of the costs. The city proposed to apportion the costs between the parties in the ratio that the number of school offices bore to the total number of offices and propositions voted upon. In prior elections the city billed the district and the district paid its pro rata share of the cost of the elections based upon a formula in Education Code section 2105. The district denied liability for reimbursement of 1953 election expenses and the First District Court of Appeal

reversed the judgment. Prior to the election, the boundaries of the district and the city were not coterminous. Education Code section 2105 specifically provided in such a case for apportionment of election expenses. However, as of April 1953 the boundaries of the city and the district were coterminous and there was no statute authorizing the district's payment of election expenses to the city. The First District explained where the city and the district are coterminous, "the same taxpayers support both and the Legislature may well have concluded it made no practical difference to such taxpayers that the whole cost of such elections is borne by the city." (*Id.* at p. 410.)

Plaintiff contends the foregoing authorities do not support defendant's position. In fact, none of the case authorities cited by either of the parties is precisely on point. They have not cited and we have not found any appellate opinion which conclusively resolves this question of statutory interpretation. Thus, we must reach our own conclusion.

■ If the words of an enactment, given their ordinary and proper meaning, are reasonably free from ambiguity and uncertainty, the courts will look no further to ascertain the legislative intent. (*Wallace* v. *Hibner, supra,* 171 Cal.App.3d 1042, 1045.) ■ "Election" is commonly defined as "a choosing or being chosen for office by vote." ■ "Hold" is commonly defined as "to have or conduct together . . . carry on . . . perform." (Webster's New World Dict. (2d college ed. 1982) pp. 449, 668.) ■ As the trial court noted, Education Code section 5424 refers only to the costs of an election that is *held*. The code section says nothing about costs expended in preparation for an election, whether held or not. The Legislature was cognizant of this distinction because other related statutes differentiate between the "preparation for" and the "holding of" elections and allocation of costs of these services between the county, local districts and municipalities. (Ed. Code, § 5303; Elec. Code, §§ 10000, 23524.)

In our view, the language of Education Code section 5424 is clear and unambiguous and is susceptible of only one interpretation, what it says. To interpret this section as requiring districts within a county to pay costs expended by the county to determine that a recall election will not be held is to read into the section that which is not there, presumably because the Legislature so intended. If we misinterpret what the Legislature intended but neglected to say, such oversight may be readily corrected. ■■■■■ We reject the reasoning of the California Attorney General's Opinion No. 85-906 and plaintiff's argument herein.[2]

---

[2]The district further contends Government Code section 6103 provides an alternate ground for affirmance because it requires the county to bear pre-call expenses. Government Code section 6103 states in relevant part: "Neither the state nor any county, city, district, or other political subdivision . . . shall pay or deposit any fee for the filing of any document or

The judgment is affirmed. Respondent is awarded its costs on appeal.

Hamlin, J., and Stone (W. A.), J., concurred.

---

paper, for the performance of any official service, or for the filing of any stipulation or agreement which may constitute an appearance in any court by any other party to the stipulation or agreement."

The trial court disagreed with the district's contention that Government Code section 6103 is dispositive. Where inconsistencies between statutes appear, courts are governed by the established principle of statutory construction that a special statute dealing expressly with a particular subject controls and takes priority over a general statute. (*Mitchell* v. *County Sanitation Dist.* (1958) 164 Cal.App.2d 133, 141 [330 P.2d 411]; *Anaheim City School Dist.* v. *County of Orange* (1985) 164 Cal.App.3d 697, 702 [210 Cal.Rptr. 722].) Elections Code section 5300 provides school district elections shall be governed by the Education Code, except as otherwise provided in the Education Code. Elections Code section 10000 imposes upon the county treasury the burden of all costs incurred in the preparation for and conduct of elections. Elections Code section 10000 (Stats. 1961, ch. 23, § 3, p. 711) was enacted after Government Code section 6103 (Stats. 1943, ch. 134, § 6103, p. 990) and is the more specific provision. Therefore, Elections Code section 10000 takes priority over Government Code section 6103.