## GEORGE H. WARD *et al.*

### *v.*

## MARVIN A. LAWRENCE *et al.*

1.  REAL ESTATE AGENTS—*when entitled to commissions.*   Where the owners of real estate employ a real estate broker to sell land for them, and give him verbal authority to make such sale, and he makes a sale and takes a written contract thereof from the purchaser, signed by him, and the names of the owners are signed thereto by one having verbal authority so to do, although the contract will not be binding on the own-ers, for want of written authority from them to sign their names to it,

yet, if the purchaser is willing to abide by it, the broker will be entitled to his commissions.

2. The owners of a tract of land on the Illinois and Michigan canal, being inquired of by a real estate agent as to the price of the land, replied, fixing the price and saying that they would be glad if the agent could sell it to his (the agent's) customer; afterwards, in a conversation with the agent, it was agreed that, if the land, which was frequently mentioned as 55 acres, could be sold for $400 per acre, the agent should have $1000 commissions; the agent then sold the land and gave a written contract, in which it was described as 55 acres south of the canal; the owners were willing to convey the land to the purchaser as it was conveyed to them, being 55 acres south of the *centre* of the canal, but the purchaser would not take it by that description and the trade fell through; the land, in the conversations between the owners and the agent, had been spoken of only as their land down on the canal: *Held*, that the only authority the agent had was, to sell the land by the description by which the owners had purchased it, and that he was not entitled to recover commissions on the sale, as made.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. HUMPHREYVILLE & JOHNSON, for the appellants.

Messrs. MERRIAM & ALEXANDER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought by Lawrence, Hartman & Quinn, real estate agents and brokers, against Ward, Ray and Faulkner, to recover for commissions for making sale of certain real estate in Cook county. The plaintiffs below recovered a verdict and judgment against all the defendants, for $641, and the defendants appealed to this court.

The evidence shows that, at an interview and negotiation had at the office of Hartman & Quinn, in Chicago, on the 27th day of August, 1872, at which the plaintiffs below, Faulkner, and one Price, were present, a contract in writing was made, purporting as follows:

"We have this day sold to Mr. Albert Price 55 acres of land, as follows: All that part of the east half of the south-

west quarter of section 4, town 38, range 13, lying south of the Illinois and Michigan canal, at $400 per acre, payable, etc., etc.

B. F. RAY,
GEORGE H. WARD,
Per W. J. FAULKNER.
W. J. FAULKNER,
ALBERT PRICE."

It is admitted that this contract was not binding upon Ray and Ward, as Faulkner had no authority in writing from them to make the contract. But Ray and Ward were willing to perform, and execute a deed for the land, to be described as all that part of the east half of the south-west quarter, etc., lying south of the *centre* of the Illinois and Michigan canal, instead of south of the Illinois and Michigan canal, it making a difference of between two and three acres in the quantity of land. Price would only take a deed according to the latter description. This was the only point of disagreement, and upon that the sale fell through, and afterward Ray and Ward sold the land to another party, through another real estate agent, paying the latter commissions.

Although the written contract of sale was not binding upon Ray and Ward, there being no authority from them in writing, yet, if they had verbally authorized the making of the contract, and Price was willing to abide by it, the commissions would have been earned.

The evidence presents the case in a somewhat different aspect, as respects Ray, from what it does as to Ward and Faulkner. As regards Ray, the evidence is clear and explicit, that Faulkner had no authority from him to make any contract for, or to act as his agent in, the sale of the land. The uncontradicted testimony of Ray is, that, some time previous to the date of the written contract, Faulkner came to his office with Lawrence, and stated that the latter, he thought, had a purchaser for their land lying down on the canal; that he, Ray, was under the impression that Lawrence was engaged

to buy the land for a customer. Lawrence inquired the price, and Ray informed him $400 an acre; that nothing was said about placing the property in Lawrence's hands, for sale. Ray remarked that he would be glad if Lawrence could sell the land to this customer. There was not a word said about commissions, nor about Faulkner having the right to sell or contract the property.

On the day of the making of the contract in writing, previously to its being drawn up, Ray was seen by both Faulkner and Lawrence, upon the subject of the commissions alone, what he was willing to pay, and Ray consented, on his part, to the payment of $1000 commissions, if the land could be sold for $400 per acre. The amount of land was mentioned frequently as being 55 acres, but nothing was said by Ray as to its location or description. This appears to be really all the testimony in the case, bearing upon the question of any authority from Ray to sell according to the description in the written contract. There was his consent to sell the land on the terms—but what land? The land south of the *centre* of the canal, no doubt Ray intended, and not the land south of the canal. The evidence, we think, falls short of showing his consent to sell according to the latter description, the one inserted in the written contract.

There can be no doubt that Ray and Ward both intended that the 55 acres should run, for quantity, to the centre of the canal. They both instantly, upon the contract coming to their knowledge, repudiated it upon that ground, and upon that ground alone. The land had been conveyed to them as running to the centre of the canal, and they would only sell as they bought. There was uncontradicted testimony that that was the customary way of selling land upon the canal.

Had the contract been presented to the parties themselves, Ray and Ward, for execution, as it should have been, they both being in Chicago at the time, they, no doubt, would have rejected the contract, and not have executed it in any

other form than as describing the land as lying south of the *centre* of the canal.

As regards Ray, then, we are of opinion the minds of the parties never met, that there was never any contract of sale effected, and no right to any commissions, for having made the sale of the property, accrued.

This suffices for the reversal of the judgment, and renders unnecessary any review of the evidence in its different bearing upon Ward and Faulkner.

Faulkner appears not to have had any real interest in the land. Ward and Ray were tenants in common, not partners. Ward could do no act to prejudicially affect Ray, except so far as he might be authorized by Ray, and we see no room here for inferring any such authority.

The judgment is reversed and the cause remanded.

*Judgment reversed.*