16] °        JANUARY TERM, 1909.        133

State ex rel. McManus v. Trustees, 138 Wis. 133.

STATE EX REL. McMANUS, Respondent, vs. BOARD OF TRUS-
TEES OF THE POLICEMEN'S PENSION FUND and others:
SULLIVAN and others, Appellants.

*January 30—February 16, 1909.*

*Policemen's pension fund: Statute construed: Disease is "injury:"*
       ·'   Certiorari: *What reviewable.*
            \

1. Within the meaning of sec. 8, ch. 397, Laws of 1903—providing
   for retirement of a policeman who should be *injured* while in
   active service and thereby disabled,—and of sec. 9—providing
   for a pension for the family of one who should "die as the re-
   sult of an *injury* received while in the line of his duty, as de-
   scribed in the preceding section,"—the contracting of a dis-
   ease (in this case, pneumonia) is being "injured" and is the
   receiving of an "injury." So *held*, notwithstanding the law of
   1903 in effect amended, so that it should read as above, an
   earlier law (ch. 265, Laws of 1899) which provided in sec. 9
   thereof for a pension when death resulted from "an injury
   received while in the line of his duty or any disease contracted
   by reason of his occupation." MARSHALL, J., dissents.
2. A finding of fact by the board of trustees of the policemen's
   pension fund of a city, made within the jurisdiction of the
   board and upon evidence before it, cannot be reversed on *cer-
   tiorari.*

APPEAL from a judgment of the circuit court for Milwau-
kee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

*Certiorari* brought by relator, who had long been a contrib-
utor to the policemen's pension fund of Milwaukee and at the
time of the relation was retired and pensioner thereon, to re-
view the action of the board of trustees in awarding a pension
to the appellant *Mary T. Sullivan* and her children, as the
widow and children of the deceased, William L. Sullivan, at
the time of his death a member of the police force. The
board made due return, from which it appears that the pen-
sion was claimed on the ground that Policeman Sullivan con-
tracted pneumonia by reason of exposure to which he was sub-
jected in the course of a trip to New York to make an arrest.

The return presents the record, which merely mentions the names of certain witnesses on behalf of the applicant and specifies the subjects on which they testified, but fails to contain such testimony. The testimony of certain other witnesses, apparently called in opposition to the application, is set forth in full, and the return shows a decision by the board, by majority vote, that the applicants are entitled to the pension according to the statute.

After the return an application was made by the three appellants to be admitted as parties defendant, because a reversal of the board's action would affect their interests, and they were so admitted, and attempted to raise various objections to the right of the relator to question the action of the board by *certiorari*. Such objections were overruled, and the trial court held that, even though it appeared by the record that the board had found that Sullivan died as the result of pneumonia contracted by him by reason of exposure to which he was subjected in the actual and active performance of duty as a policeman, the board were not authorized by law to grant him a pension, and accordingly entered judgment reversing their decision, from which judgment *Mary T. Sullivan* and her two children bring this appeal.

For the appellants there was a brief by *John Toohey* and *Walter H. Bender,* attorneys for *Mary T. Sullivan,* and by *J. L. O'Connor,* guardian *ad litem* for *Marie Antoinette Sullivan* and *Mark William Sullivan;* and the cause was argued orally by *Mr. Bender* and *Mr. Toohey.*

For the respondent there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

DODGE, J. Brushing aside various obstacles of practice or procedure which are urged by the interveners to maintenance of this action as between the original parties, we proceed at once to a consideration of the real question involving the merits of the action; that is, whether pneumonia suffered and

contracted in the line of, and by reason of, the active performance of duties assigned to a policeman is such an injury as entitles his widow to a pension if death results therefrom. The answer must be found by construction of secs. 8 and 9, ch. 397, Laws of 1903. That act, after making provision for the creation of a fund, partly by deduction from policemen's salaries and partly from other sources, and creating a board of trustees for the administration thereof, provides, in secs. 8 and 9:

"Sec. 8. If any member of the police department while engaged in the performance of his active duty as such policeman be injured, and found upon an examination by a medical officer ordered by said board to be physically or mentally permanently disabled by reason of such injury so as to render necessary his retirement from service in such department, such board shall retire such disabled members from service; provided no such retirement on account of disability shall occur unless the member has contracted such disability within the hours of each day or night when he is required to be on active duty by the rules of the department or while he is engaged in the performance of 'emergency duty' during his regular 'off hours.' . . .

"Sec. 9. If any member of such police department shall while in the performance of his duty be killed or die as the result of an injury received while in the line of his duty, *as described in the preceding section*, . . . " his widow and minor children, if any, shall receive a pension.

It will be observed that the right to retirement under sec. 8 and the right to a pension in case of death under sec. 9 are dependent on the condition under sec. 8 that the policeman "be injured," and under sec. 9 that he die as the result of "an injury;" and the question raised by relator is whether the contracting of disease is being injured and is the suffering of an injury within the meaning of this act. Sec. 9, by the italicised words, evidently refers back to sec. 8 for whatever of definition of "injury" may there be found. The word "injury," in ordinary modern usage, is one of very broad

designation. In the strict sense of the law, especially the common law, its meaning corresponded with its etymology. It meant a wrongful invasion of legal rights and was not concerned with the hurt or damage resulting from such invasion. It is thus used in the familiar law phrase *damnum absque injuria*. In common parlance, however, it is used broadly enough to cover both the *damnum* and the *injuria* of the common law, and indeed is more commonly used to express the idea belonging to the former word, namely, the effect on the recipient in the way of hurt or damage, and we cannot doubt that at this day its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by any one. Hence, unless some reason to the contrary is presented, it should be so understood in these statutes. Subd. 1, sec. 4971, Stats. (1898). The respondent contends that, nevertheless, the word should be limited to the results of external violence. By itself the word "injury" or "injure" has no more application to the result of violence than to the result of any other injurious influence. A disease resulting from negligence of a physician in failing to give treatment is just as much an injury in common phrase as if it resulted from affirmative maltreatment or external violence. Therefore there is nothing inherent in the word to limit the injuries to which this statute applies to those from physical or external violence. If one be tortiously exposed to extreme cold he may suffer the freezing and consequent loss of a limb, or the chill of an internal membrane or tissue and resultant congestion or disease. No reason is apparent why either is more or less an injury than the other. In examining sec. 8 we find some suggestions in the context of the mental conception of the legislators in the use of the word "injured." In one phrase it is used in context and collocation with physical or mental permanent disability, and in another the legislators speak of such disability as one to be "contracted." These both point strongly to a conception of

something other than external violence, which would ordinarily be said to be suffered or inflicted rather than contracted. The purpose of the act, too, would seem to require the broader meaning of the word. Why is not the policeman who, in the faithful performance of his duty, exposes himself to a danger like smallpox or diphtheria infection, as worthy of provision for his disability or for his widow as one who exposes himself to the knife or the club of a lawbreaker? Why is it not as promotive of the efficiency of the force for the protection of public welfare that he be encouraged in the one case as in the other? These considerations, and many others like them which might be mentioned, constrain us to the conclusion that the word "injury" is used in this statute in a sense broad enough to include the contracting of a disease, provided, of course, that such injury is suffered in the course of and by reason of the performance of the distinctive duties imposed upon the sufferer as a policeman (*Hutchens v. Covert,* 39 Ind. App. 382, 78 N. E. 1061), a fact which we deem to have been ascertained and decided upon sufficient showing by the board of trustees, although their record is not as full as it might be in its disclosure of the class of evidence which was submitted for their consideration. A provision in sec. 9 for a pension upon death for any cause after fifteen years' service marks a contrast or antithesis to this last requirement of causal connection between the active service and the injury, and does not signify a limited meaning in the word "injury" caused by the service.

In reaching the conclusion that disease is included we have not overlooked the fact, urged by relator, that an earlier statute (ch. 265, Laws of 1899, of which the law of 1903 was in effect an amendment) contained in sec. 9 both expressions, an injury received in the line of his duty "or any disease contracted by reason of his occupation," and that the latter words were eliminated in the law of 1903, having substituted therefor the words "as described in the preceding section."

Notwithstanding this change, which doubtless is of some significance, it still seems to us that the injury described and provided for in sec. 8 was intended to include the inoculation with or contraction of disease, and that the new expression in sec. 9 was inserted in the act of 1903 for the purpose of perpetuating that meaning for the word "injury" in the latter section.

Our view as to the legislative intent results in the conclusion that it was within the power of the board of trustees to award the pension in question if they found that the pneumonia from which Sullivan died was contracted in the actual performance of his duties and caused thereby. Their resolution of that question of fact from the evidence before them was within their jurisdiction and cannot be reversed upon *certiorari*. *State ex rel. Manitowoc v. County Clerk,* 59 Wis. 15, 20, 16 N. W. 617; *State ex rel. Cook v. Houser,* 122 Wis. 534, 561, 100 N. W. 964.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the action of the board of trustees in granting pension to appellants.

MARSHALL, J. (*dissenting*). I cannot bring myself to concur in the decision of this case and will state briefly my reasons therefor.

The right result of the controversy here presented depends upon these familiar principles for statutory construction:

First. A legislative enactment should not be construed where there is no need for construction.

Second. There is no need for construction when the meaning of the enactment, in its plain, every-day sense, looking to words therein used, or looking at them in the light of the subject dealt with, is not involved in uncertainty.

Third. Where the meaning of an enactment is evident and leads to no absurd conclusion there can be no reason for refusing to attribute the meaning which the words signify; to

go elsewhere in search of conjecture, in order to restrict or· extend the act, would be to attempt to elude it. Such a method if once admitted would be extremely dangerous, for there would be no law, however definite in its language, which might not, by interpretation, be rendered useless.

Fourth. Judicial construction takes hold only when there is obscurity of meaning. So we must look first for uncertainty, not commencing to construe in advance of uncertainty appearing.

Fifth. All words of an enactment should be regarded as· having been used in respect to some particular purpose.

Sixth. The plain, ordinary meaning of words should be· regarded as having been the one intended, unless it appears, reasonably certain from the enactment, that some other meaning was intended.

Seventh. The legislative purpose when discovered, expressed within the reasonable scope of the language in an enactment, must prevail, regardless of consequences, and must be taken to be a part of the enactment the same as if expressed in the ordinary sense of words.

Let us now apply those rules to the enactment in question.

The original law is ch. 265, Laws of 1899. Sec. 8 was as follows:

"If any member of the police department shall while engaged in the performance of his duty as such policeman be· injured and found upon an examination by a medical officer· ordered by said board to be physically or mentally permanently disabled by reason of service in such department so as. to render necessary his retirement from service in such department, such board shall retire such disabled member from service; provided, no such retirement on account of disability· shall occur unless the member has contracted such disability· while in the active service of such department." . . .

That was changed by ch. 397, Laws of 1903, by omitting· "shall" before "while," interpolating "active" before "duty," and dropping the last of the quoted words, "while in the active-

140    SUPREME COURT OF WISCONSIN.    [FEB.

State ex rel. McManus v. Trustees, 138 Wis. 133.

service of such department," and in place thereof adding the words: "within the hours of each day or night when he is required to be on active duty by the rules of the department or while he is engaged in the performance of 'emergency duty' during his regular 'off hours'."

Sec. 9 of the original enactment was this:

"If any member of such police department shall, while in the performance of his duty, be killed or die as a result of an injury received in the line of his duty *or any disease contracted by reason of his occupation,* or if any member of such department, after fifteen years' service in such department, shall die from any cause whatever while in said service, or if any member of such department shall die from any cause whatever after having been retired upon a pension under the provisions of this act, and shall leave a widow or minor child or children under sixteen years of age surviving, . . ."

Note particularly that this section provides only for death while in the performance of duty, (a) by injury so received in the line of his duty, (b) disease contracted by reason of his occupation, (c) death in the service from "any cause," or (d) death from "any cause" after retirement upon a pension, leaving a widow or minor child or children under sixteen years of age.

The section was changed in the Laws of 1903 to this:

"If any member of such police department shall while in the performance of his duty be killed or die as a result of an injury received in the line of his duty, as described in the preceding section, or if any member of such department, after fifteen years' service in such department, shall die from any cause whatever while in said service, or if any member shall die from any cause whatever after having been retired upon a pension under the provisions of this act, and shall leave a widow or minor child or children under the age of sixteen years surviving, the said board shall direct the payment from said pension fund of the following sums, monthly, to wit:

It will be noted that the changes were, first, by striking out after the words "in the line of his duty" the words "or any disease contracted by reason of his occupation," and second, by interpolating in place thereof the words "as described in the preceding section."

Thus the later act, unmistakably radically restricts the original law. Whereas, formerly, relief was afforded for disability occurring during the official term while the officer was in service on or off actual duty, unless on a vacation for some reason, now it is restricted to disability occurring within hours when, under the rules of the department, he is required to be actually on duty, or in case of an emergency. Formerly a pension was grantable to a dependent widow in case of death of the officer, her husband, from an injury in the line of duty as well as from death by disease contracted by reason of his occupation. Now the latter is not possible, the condition giving competency to the dependent for a pension being confined to death of the officer resulting from an injury occurring in the line of his duty as prescribed in sec. 8. The elimination of death from disease as creating such competency would seem to leave no reasonable ground whatever for holding that death from pneumonia, the circumstance relied on in this case, is retained.

I will not pay so little heed to what I believe to be ordinary understanding of ordinary persons, as to spend time demonstrating that while a disease as well as an injury may create damage, it is false logic to urge that an injury, in the ordinary sense, is a disease, or a disease is an injury in any other sense than that it injuriously affects the afflicted one, causing damage.

It would seem that the mere fact of legislative dropping out of "disease" as a cause of death creating competency of a dependent for a pension, under one of the rules for construction we have named, precludes the court from resorting to construction for the purpose of retaining it. It further

would seem that such resort flies in the face of rule 3, that to construe that which has no need for construction is to use the function to construe to defeat the legislative intent rather than to discover and give effect to it.

Again, since the amended section only leaves death from injury sufficient to create competency of a dependent for a pension; an "injury" as that term is used in sec. 8, there can be no fair question but that it means a physical hurt, such as is commonly understood by the term "injury" when it is applied to a misfortune to a person engaged in an occupation involving extraordinary hazard as to receiving bodily wounds.

When we speak of a person as having been injured in the army or in railroad employment, or in the performance of duty of keeping the peace, or protecting society from criminal offenders, or apprehending such offenders, or in any other occupation exposing one to peculiar dangers as to bodily injuries, what do we mean by the term "injury"? In other words, what is its plain, ordinary meaning as applied to such situations? I venture to say the universal answer must be a physical hurt, a wounding of the body.

If the preceding be correct, to go beyond such common meaning into the field of broad general, or that of technical, sense violates the first, second, third, and fourth rules, and particularly the sixth, that the plain, ordinary meaning of words should be taken unless it appears reasonably certain some other was intended, and also the fifth, that all words of an enactment should be regarded as having been used in respect to some particularly indicated purpose. The latter because the element of elimination of the cause "disease" shows, manifestly, a purpose to exclude it and restrict the term "injury" to the particular purpose of providing relief to the dependent or dependents in case of death from "injury" as distinguished from death by "disease," as death from pneumonia.

The striking feature of the elimination of "disease" as a

·cause of death creating competency for beneficial participation of a dependent in the pension fund, seems to me to have been entirely nullified by the result of this case, rendering the whole manifest purpose of the amendatory act nugatory.

True, the term "injury" is broad enough to include anything which causes damage, but is that a warrant for departing from the common-sense, ordinary meaning as applied to the particular situation? The broad sense includes injury to reputation, injury to property, and injury to rights as well as injury to the person in the sense of a bodily wounding, but ·cannot one see, very clearly, that only in the latter sense is the term "injury" to a policeman in the course of his active duties as such, contemplated when the term is used in regard to such a person engaged in such service? If so, by what warrant can the court, merely because of the broader signification of the word, go into the boundless field, especially in view of there not only being nothing in the situation to suggest it, but such a purpose being expressly negatived by the legislative restriction by elimination of the very words which formerly included circumstances, somewhat within such broad field. In my judgment there is no such warrant, and so in my opinion the death involved here by "disease" ·should be regarded not only as not being within the act but as being expressly excluded from it, and so the order appealed from should be affirmed.