501 A.2d 27

**William L. HILL**

v.

**Katherine R. FITZGERALD, Pers. Rep. of the Estate of Joseph C. Fitzgerald, M.D., deceased.**

**Misc. No. 6, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 10, 1985.

Robert C. Verderaime (Verderaime & DuBois, P.A., Baltimore, on the brief), for appellant.

Ronald U. Shaw and Mark D. Gately (Miles & Stockbridge, Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

MURPHY, Chief Judge.

The questions presented in this case have been certified by the United States District Court for the District of Maryland, pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974, 1984 Repl.Vol.), §§ 12–601 through 12–609 of the Courts and Judicial Proceedings Article. The questions involve Maryland's statute of limitations for medical malpractice claims, codified as Maryland Code (1974, 1984 Repl. Vol.), § 5–109 of the Courts Article. That statute, which was enacted by ch. 545 of the Acts of 1975, effective July 1, 1975, provides in pertinent part as follows:

> "An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, whichever is the shorter."

By an uncodified provision in Section 2 of ch. 545, the statute is applicable "only to injuries occurring after July 1, 1975." The certified questions are as follows:

I. Where there is a continuous course of medical treatment for a single medical condition, where such treatment begins before July 1, 1975, and concludes after July 1, 1975, is § 5–109 the applicable statute of limitations?

II. If § 5–109 is the applicable statute of limitations under such circumstances, when does the five (5) year portion of that statute begin to run, and when does the three (3) year portion of that statute begin to run?

III. Is § 5–109 unconstitutional as being in violation of Article 19 of the Maryland Declaration of Rights?

## I.

The "Statement of Facts" contained in the Order of Certification reveals that William L. Hill filed a complaint in the federal district court on December 2, 1983, alleging medical malpractice by Joseph C. Fitzgerald, M.D., now deceased. Hill consulted Dr. Fitzgerald on referral from another physician for diagnosis and treatment of a urinary tract infection and was seen for the first time on January 27, 1975. He consulted Fitzgerald thereafter on a number of occasions and treatment ended on November 5, 1975. Specifically, Hill alleges that Dr. Fitzgerald was negligent in diagnosing his ailment to be multiple sclerosis when, in fact, he was suffering from a spinal tumor.

Hill contends that the incorrect diagnosis of multiple sclerosis was made as early as his first visit on January 27, 1975 and certainly not later than February 14, 1975. It is furthermore alleged that the incorrect diagnosis was adhered to throughout the subsequent course of Hill's treatment, including his last visit to Dr. Fitzgerald on November 5, 1975. Eventually, Hill's condition deteriorated to the extent that he sought other medical care, at which time a surgical procedure revealed that he had a spinal tumor and not multiple sclerosis.

Katherine R. Fitzgerald, personal representative of the deceased, moved for summary judgment on the ground that Hill's cause of action was barred by the provision of § 5–109 which places a five-year maximum limitation on the filing of medical malpractice claims. Fitzgerald argues that the statute commenced to run on the last date of treatment, November 5, 1975, and that Hill's claim is time-barred because he failed to file "within five years of the time when the injury was committed," as required by the statute.

Hill maintains that since the alleged misdiagnosis occurred prior to July 1, 1975, § 5–109 is not applicable in this case. He asserts that § 5–101 of the Courts Article is the statute of limitation which was applicable to malpractice claims prior to the enactment on July 1, 1975 of § 5–109. Under § 5–101 a lawsuit must be filed within three years from the date of accrual of the cause of action.[1]

The parties acknowledge that Maryland recognizes the "discovery rule" whereby a cause of action accrues at the time the claimant first knew or reasonably should have known of the alleged wrong. *See Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981). That the rule has long been applicable in medical malpractice cases is equally clear. *See Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966); *Hahn v. Claybrook*, 130 Md. 179, 100 A. 83 (1917); *Lutheran Hospital v. Levy*, 60 Md.App. 227, 482 A.2d 23 (1984); *Jones v. Sugar*, 18 Md.App. 99, 305 A.2d 219 (1973). Hill alleges that he first learned of Dr. Fitzgerald's misdiagnosis on December 5, 1980 when surgery was performed by another physician. Accordingly, he asserts that as suit was filed on December 2, 1983, it was within the three-year limitation period applicable prior to the enactment of § 5–109.

---

**1.** Section 5–101, in its entirety, reads as follows:
"A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

The parties have stipulated that Hill was undergoing a continuous course of treatment for a single medical condition and that treatment commenced before July 1, 1975 and terminated after that date. Furthermore, Fitzgerald has conceded that the initial misdiagnosis of multiple sclerosis was made not later than in February of 1975.

## II.

The first certified question seeks a determination of whether § 5–109 is applicable under the certified facts of this case. As earlier noted, § 2 of ch. 545 of the 1975 Act provides that the statute "shall apply only to *injuries occurring* after July 1, 1975." (Emphasis supplied.)

We considered the meaning of the term "injury," within the context of medical malpractice, in *Oxtoby v. McGowan*, 294 Md. 83, 447 A.2d 860 (1982). That case involved the Health Care Malpractice Claims Act (HCMCA), §§ 3–2A–01 through 3–2A–09 of the Courts Article, which requires that certain medical malpractice claims be submitted to an arbitration panel before resort is made to a court of law. The HCMCA, which was adopted by ch. 235 of the Acts of 1976, provided in uncodified Section 5 that the Act

"shall take effect July 1, 1976, and shall apply only to medical injuries occurring on and after that date."

The defendant in *Oxtoby* undertook to perform a hysterectomy and a bilateral salpingo oophorectomy (the removal of both fallopian tubes and ovaries) in order to prevent the development of ovarian cancer. However, he allegedly failed to remove part of one ovary and tube. As an alleged result, the patient died of cancer and the family brought a wrongful death action in the circuit court against the surgeon. Following a defendant's verdict, the plaintiff claimed on appeal that the trial court was without jurisdiction because the case had not previously been submitted to an arbitration panel as required by the HCMCA. The plaintiff argued that the HCMCA was applicable because, while the negligent act had occurred prior to the July 1, 1976 effec-

tive date, the patient died and the family incurred expenses after that date. In other words, the plaintiff claimed that the HCMCA was applicable because much of the harm resulting from the negligent act occurred after the effective date.

In concluding that the HCMCA was inapplicable because the "injury" had occurred prior to its effective date, we noted:

"The General Assembly obviously was not concerned with invasions of a legally protected interest which do not cause harm in the sense of 'loss or detriment in fact. . . .' Restatement (Second) Torts, § 7(2) (defining 'harm'). The Act is concerned with the invasion of legally protected interests coupled with harm." 294 Md. at 93–94, 447 A.2d 860.

We then quoted as follows from *State ex rel. McManus v. Board of Trustees of Policemen's Pension Fund,* 138 Wis. 133, 135–36, 119 N.W. 806, 807 (1909):

"The word 'injury,' in ordinary modern usage, is one of very broad designation. In the strict sense of the law, especially the common law, its meaning corresponded with its etymology. It meant a wrongful invasion of legal rights and was not concerned with the hurt or damage resulting from such invasion. It is thus used in the familiar law phrase *damnum absque injuria.* In common parlance, however, it is used broadly enough to cover both the *damnum* and the *injuria* of the common law, and indeed is more commonly used to express the idea belonging to the former word, namely, the effect on the recipient in the way of hurt or damage, and we cannot doubt that at this day its common and approved usage extends to and includes any hurtful or damaging effect which may be suffered by any one."

We went on to say:

"Thus, in general, 'medical injuries' as used in the effective date clause refers to legally cognizable wrongs

or damage arising or resulting from the rendering or failure to render health care." 294 Md. at 94.

We thus held in *Oxtoby* that the surgeon's negligent act, coupled with the harm which resulted from leaving part of a fallopian tube and ovary in the patient, amounted to a legally cognizable wrong and hence a medical injury which occurred prior to July 1, 1976, rendering the HCMCA inapplicable. While most of the harm resulting from the negligent act in *Oxtoby* occurred after the HCMCA's effective date, we indicated that all that is required is that the negligent act be coupled with some harm in order for a legally cognizable wrong—and, therefore, injury—to have occurred.

Indeed, in *Oxtoby*, we noted our agreement with an earlier decision of the Court of Special Appeals in *Johns Hopkins Hospital v. Lehninger*, 48 Md.App. 549, 429 A.2d 538, *cert. denied*, 290 Md. 717 (1981). The court in *Lehninger* sought to construe the effective date clause of the HCMCA. The plaintiff filed suit alleging that the defendant negligently failed to diagnose a fractured bone and bone disease. The misdiagnosis took place prior to the July 1, 1976 effective date of the HCMCA. However, the plaintiff only began to suffer chronic pain in 1977. As in *Oxtoby*, the issue was whether the case should have been submitted to an arbitration panel prior to trial in the circuit court. The intermediate appellate court held that the HCMCA was not applicable because the alleged negligent diagnosis was made prior to the HCMCA's effective date. There, as in the present case, it did not matter that much of the harm resulting from the misdiagnosis occurred after the statute's effective date. We noted with approval in *Oxtoby* that *Lehninger* held "that a medical injury occurs, within the meaning of the effective date clause, even though all of the resulting damage to the patient has not been suffered prior to the Act's effective date." 294 Md. at 97, 447 A.2d 860.

While § 5 of ch. 235 of the Acts of 1976 (the HCMCA effective date provision) speaks of "medical injury," whereas § 2 of ch. 545 of the Acts of 1975 (§ 5–109's effective

date clause) refers to "injuries," the legislature, in our view, intended no substantive distinction in the legal application of the two terms. The former act defines "medical injury" to mean "injury arising or resulting from the rendering or failure to render health care." Section 5–109 similarly provides that its limitations provisions are applicable to "injuries" which arise "out of the rendering of or failure to render professional services by a health care provider."

■ Whether the original allegedly negligent misdiagnosis of Hill's condition caused some harm and therefore "injury" prior to July 1, 1975 is a question of fact to be determined in light of the principles articulated in *Oxtoby.* If the misdiagnosis did, the limitations provisions of § 5–109 would not be applicable. The pre-July 1, 1975 statute, § 5–101, would be applicable and the discovery rule as thereunder applied would ultimately control whether Hill's injury claim was barred by limitations. On the other hand, if no harm, *i.e.,* loss or detriment in fact occurred until after July 1, 1975, § 5–109 would apply and the provisions of that statute would govern Hill's claim.

In so concluding, we have considered Fitzgerald's contention that even if the original misdiagnosis and ensuing harm occurred prior to July 1, 1975, the common law "continuous course of treatment" rule, applicable in medical malpractice cases, operated to delay the accrual date of Hill's cause of action until after the effective date of § 5–109. Therefore, according to Fitzgerald, no "injury" occurred under the continuing treatment rule until he finally discharged Hill from his care without having made a correct diagnosis. Fitzgerald's position is that as Hill's treatment was concluded in November of 1975, § 5–109's five-year maximum limitation period would be applicable and would operate as a time bar to Hill's claim.

Under the continuous course of treatment rule, as articulated in *Waldman v. Rohrbaugh, supra,* 241 Md. at 140–41, 215 A.2d 825

"if the treatment by the doctor is a continuing course and the patient's disease or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the medical man for the particular disease or condition involved has terminated, unless during the course of treatment the patient learns or should reasonably have learned of the harm, in which case the statute runs from the time of knowledge, actual or constructive."

Later in the course of its opinion, the Court restated the rule in these terms (241 Md. at 142, 215 A.2d 825):

"[I]f the facts show continuing medical or surgical treatment for a particular illness or condition in the course of which there is malpractice producing or aggravating harm, the cause of action of the patient accrues at the end of the treatment for that particular illness, injury or condition, unless the patient sooner knew or reasonably should have known of the injury or harm, in which case the statute would start to run with actual or constructive knowledge."

The continuing treatment rule has been applied in medical malpractice cases because of the confidential, special relationship that exists between patient and physician. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 744 (2nd Cir.1979). More specifically, the reason for the rule, as set forth in *Brown v. United States*, 353 F.2d 578, 580 (9th Cir.1965), "is that one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems and that the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship."

 Where applicable, the continuing treatment rule simply tolls the statute of limitations by delaying the accrual date of undiscoverable medical malpractice until the termination of treatment. The rule does not, however, govern the date upon which the actionable negligence occurred. Section 5–109 does not apply in any case unless the

"injury" occurred after July 1, 1975. Thus, the provisions of that section have no applicability to a pre-July 1, 1975 injury and do not operate to advance the accrual date of such an injury to a time after the effective date of § 5–109. *See Dennis v. Blanchfield*, 48 Md.App. 325, 330, 428 A.2d 80 (1981) (holding of the Court of Special Appeals approved in *Oxtoby, supra*, 294 Md. at 96–97, 447 A.2d 860), *aff'd in part and modified on other grounds*, 292 Md. 319, 438 A.2d 1330 (1982); *McDermott v. Torre*, 56 N.Y.2d 399, 452 N.Y.S.2d 351, 354–55, 437 N.E.2d 1108, 1111–12 (1982).

### III

The second certified question assumes the applicability of § 5–109 and seeks a determination as to when the three- and five-year limitation periods begin to run in a case which involves, as here, a continuous course of treatment for a single medical condition.

Section 5–109 provides that an action for medical malpractice "shall be filed ... within three years of the date when the injury was discovered" but in no event later than "five years of the time the injury was committed." In determining the meaning of these words, we bear in mind that the language of the statute is the primary source from which the intent of the General Assembly is determined. *See McAlear v. McAlear*, 298 Md. 320, 469 A.2d 1256 (1984); *Atlantic Richfield Co. v. Sybert*, 295 Md. 347, 456 A.2d 20 (1983). Where the provisions of the statute are clear and unambiguous, as here, there is no room for construction. *See Willis v. State*, 302 Md. 363, 488 A.2d 171 (1985); *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983).

While we recognize the rule that statutes are not to be construed to alter the common law by implication, *see Hardy v. State*, 301 Md. 124, 131, 482 A.2d 474 (1984), we think that the words of § 5–109 expressly place an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury

was committed, *i.e.*, the date upon which the allegedly negligent act was first coupled with harm. The purpose of the statute, readily evident from its terms, was to contain the "long-tail" effect of the discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment. The statute is a response to the so-called crisis in the field of medical malpractice claims, *see Attorney General v. Johnson*, 282 Md. 274, 385 A.2d 57, *appeal dismissed*, 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978), and contains no room for any implied exceptions.[2] *See Walko Corp. v. Burger Chef*, 281 Md. 207, 378 A.2d 1100 (1977). Section 5–109 is couched in terms of when the injury was committed and not when the entire course of treatment is finally concluded. The provisions of § 5–109, and the intent underlying the enactment of that statute, are plainly inconsistent with the survival of the continuing treatment rule. We thus conclude that the common law rule was abrogated by the legislature when it enacted § 5–109.[3] The three- and five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not.

## IV

The third certified question assumes the applicability of § 5–109 and seeks a determination as to whether the

---

**2.** Section 5–109 expressly provides that if a claimant was under 16 years of age at the time the injury was committed, "the time shall commence when he reaches the age of 16."

**3.** That the legislature is empowered to change the common law is, of course, well settled. *See Pope v. State*, 284 Md. 309, 396 A.2d 1054 (1979); *State v. Canova*, 278 Md. 483, 365 A.2d 988 (1976).

statute constitutes a denial of access to the courts in violation of Article 19 of the Maryland Declaration of Rights, which provides:

"That every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the land."

It is argued that access to courts is a fundamental right which is abrogated by § 5–109 for those plaintiffs who do not discover injuries within five years of their occurrence. Thus, it is maintained that § 5–109 can only be valid if it furthers a compelling state interest, thereby withstanding strict scrutiny. *See Attorney General v. Johnson, supra,* 282 Md. at 309–10, 385 A.2d 57. Under the substantive due process analysis put forth by Hill, however, strict scrutiny will only be invoked in those cases where laws "significantly interfere" with a fundamental right. *See Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978); *Attorney General v. Waldron,* 289 Md. 683, 711, 426 A.2d 929 (1981); *Attorney General v. Johnson, supra,* 282 Md. at 310, 385 A.2d 57. We hold that § 5–109 imposes no such significant interference.

In *Whiting-Turner Contracting Co. v. Coupard,* 304 Md. 340, 499 A.2d 178 (1985), a statute of limitations for actions against architects or professional engineers, § 5–108(b) of the Courts Article, was also challenged as an unconstitutional violation of Article 19. Section 5–108(b) provides that no tort claims may be brought against architects and engineers if the injury occurs more than ten years from the date of completion of an improvement. In holding in favor of the statute's constitutionality, we declined to apply strict scrutiny. In so doing, we relied on *Attorney General v. Johnson, supra,* 282 Md. 274, 385 A.2d 57, where the mandatory requirement of pretrial arbitration in medical malpractice cases was attacked as an unconstitutional burden on the right to access provided by Article 19.

The Court in *Johnson* looked to the reasonableness of the statute and concluded:

"The 'law of the land' in Article 19 is the same due process of law required by the fourteenth amendment ... and we simply cannot conclude that the additional expense and delay mandated by this malpractice claims statute is so unreasonable in relation to its legitimate goal that it contravenes due process." 282 Md. at 298–99, 385 A.2d 57 (citation omitted).

We noted in *Johnson* that in *Zablocki v. Redhail, supra,* the Supreme Court observed that strict scrutiny is only applied when a statutory classification significantly interferes with the exercise of a fundamental right. 282 Md. at 310, 385 A.2d 57. Regarding the requirement of prior nonbinding arbitration, we held in Johnson that "[s]ince there is ... no interference with the exercise of a fundamental right, ... there is no occasion to subject the Act to strict scrutiny." *Id.*

Hill undertakes to distinguish *Johnson* from the present case, arguing that the arbitration requirement merely creates a precondition to the exercise of the right of access whereas § 5–109 "destroys" that right. This contention is directly contrary to *Allen v. Dovell,* 193 Md. 359, 66 A.2d 795 (1949) where a limitation statute was similarly attacked as a violation of due process. We said:

"It is thoroughly understood that a statute of limitations, which does not destroy a substantial right, but simply affects remedy, does not destroy or impair vested rights.... It is true that the Legislature cannot cut off all remedy and deprive a party of his right of action by enacting a statute of limitations applicable to an existing cause of action in such a way as to preclude any opportunity to bring suit. However, the Legislature has the power to amend a statute of limitations either by extending or reducing the period of limitations, so as to regulate the time within which suits may be brought, provided that the new law allows a reasonable time after its enactment for the assertion of an existing right or the enforcement

of an existing obligation." *Id.* at 363–64, 66 A.2d 795 (citation omitted).

As the common law is subject to legislative change, there is no vested right in any common law rule. *Munn v. Illinois,* 94 U.S. (4 Otto) 113, 134, 24 L.Ed. 77 (1876); *Whiting-Turner, supra.* Thus, the ultimate application of the common law discovery rule in medical malpractice cases may be limited by statute. As we said in *Whiting-Turner,* we look to the reasonableness of the statutory restriction in determining whether access to the courts has been denied in violation of Art. 19. The three- and five-year limitation periods provided by § 5–109 are not so unreasonably short in relation to the purpose of the statute as to contravene due process. *Cf. Frick v. Maldonado,* 296 Md. 304, 462 A.2d 1206 (1983). The period of limitations provided by § 5–109 prior to the imposition of an absolute time bar represents, we think, a fair balance, permitting the State to further a legitimate purpose while affording protection to individuals who sustain injuries by reason of medical malpractice. Laws which do not make distinctions based on suspect classifications or significantly interfere with a fundamental right are presumed constitutional and they will only be struck down if the party challenging them proves they have no rational basis. *Department of Transportation v. Armacost,* 299 Md. 392, 409, 474 A.2d 191 (1984); *Hornbeck v. Somerset Co. Bd. of Educ., supra,* 295 Md. at 642, 458 A.2d 758. Therefore, § 5–109, being reasonable, must be sustained.[4]

---

**4.** The great majority of jurisdictions that have considered the constitutionality of state statutes limiting the time within which suit must be filed in medical malpractice cases have upheld them. *See e.g., Brubaker v. Cavanaugh,* 741 F.2d 318 (10th Cir.1984) (four year limitation, Kansas Law); *Reese v. Rankin Fite Memorial Hospital,* 403 So.2d 158 (Ala.1981) (four years); *Owen v. Wilson,* 260 Ark. 21, 537 S.W.2d 543 (1976) (two years except foreign objects left in the body); *Kite v. Campbell,* 142 Cal.App.3d 793, 191 Cal.Rptr. 363 (1983) (three years except foreign objects and fraud); *Anderson v. Wagner,* 79 Ill. 295, 37 Ill.Dec. 558, 402 N.E.2d 560, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 54, 66 L.Ed.2d 11 (1980) (four years); *Carmichael v. Silbert,* 422

Moreover, as an alternative ground of decision, those who in 1867 framed Art. 19 of the Maryland Declaration of Rights could not have intended that a five-year limitation period within which to bring a tort action would violate the provisions of that article. In Maryland, statutes of limitation have their origin in the Act of 21 James I, ch. 16, § III. *Roland Electrical Co. v. Black,* 163 F.2d 417 (4th Cir.1947). At the time of the 1867 Constitutional Convention at which Art. 19 was proposed, Maryland Code (1860, 1861–67 Supp.) Art. 57, § 1 was then in effect and provided in virtually all tort and contract actions that suit must be commenced within three years "from the time, the cause of action accrued." Maryland law then provided that limitations against a right or cause of action, including a malpractice action, ran from the date of the alleged wrong and not from the time the wrong was discovered. *See Goldstein v. Potomac Elec. Power Co.,* 285 Md. 673, 684, 404 A.2d 1064 (1979); *Waldman v. Rohrbaugh, supra,* 241 Md. at 139, 215 A.2d 825. It was not until 1917, in *Hahn v. Claybrook, supra,* that the discovery rule was first made applicable by judicial decision in medical malpractice cases. As the limita-

N.E.2d 1330 (Ind.Ct.App.1981) (two years); *Ross v. Kansas City Gen. Hosp. & Medical Ctr,* 608 S.W.2d 397 (Mo.1980) (two years except foreign objects).

Some cases have found statutes like § 5–109 to be constitutional where challenged on the basis of an "open courts" provision in the state constitution similar to Art. 19 of the Maryland Declaration of Rights. *See e.g., Hargett v. Limberg,* 598 F.Supp. 152 (C.D.Utah 1984) (four years except foreign objects and fraud); *Dunn v. St. Francis Hosp., Inc.* 401 A.2d 77 (Del.1979) (three years); *Valentine v. Thomas,* 433 So.2d 289 (La.Ct.App.), *cert. denied,* 440 So.2d 728 (La.1983) (three years); *Colton v. Dewey,* 212 Neb. 126, 321 N.W.2d 913 (1982) (ten years); *Walker v. Santos,* 70 N.C.App. 623, 320 S.E.2d 407 (1984) (four years except foreign objects); *Harrison v. Schrader,* 569 S.W.2d 822 (Tenn.1978) (three years except foreign objects and fraud).

Other jurisdictions deciding that similar statutes were unconstitutional include *Kenyon v. Hammer,* 142 Ariz. 69, 688 P.2d 961 (1984) (three years except foreign objects and fraud); *Austin v. Litvak,* 682 P.2d 41 (Colo.1984) (three years except foreign objects and fraud); *Phelan v. Hanft,* 471 So.2d 648 (Fla.Dist.Ct.App.1985) (four years except fraud); *Carson v. Maurer,* 120 N.H. 925, 424 A.2d 825 (1980) (two years except foreign objects).

tion period provided in § 5–109 is actually longer than that provided by the law existing at the time that Art. 19 was adopted, no violation of that constitutional provision is here involved.

*CERTIFIED QUESTIONS ANSWERED AS HEREIN SET FORTH; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.*

ELDRIDGE, Judge, concurring:

I concur in the result and in the Court's opinion except Part IV.