545 A.2d 714

**Ethel RUSSO**

v.

**Eduard ASCHER.**

**No. 1657, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Aug. 9, 1988.

R. David Adelberg, Towson, for appellant.

Susan A. Polis (Charles N. Ketterman, Angus R. Everton and Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Baltimore, for appellee.

Argued before GARRITY, ROBERT M. BELL and POLLITT, JJ.

GARRITY, Judge.

We shall examine whether summary judgment was properly granted on the basis of the statute of limitations pertaining to medical negligence.

The appellant, Ethel Russo, filed a complaint with the Health Claims Arbitration Office on November 7, 1985, alleging medical negligence on the part of the appellee, Eduard Ascher, M.D., who had administered psychiatric

treatment to her. The arbitration panel granted the appellee's motion for summary judgment on the basis of the expiration of the statute of limitations. Thereafter, the the Circuit Court for Baltimore City (Ward, J.) granted the appellee's motion for summary judgment, again on statute of limitations grounds.

### Facts

On September 15, 1971, the appellee began psychiatric treatment of the appellant, who had been complaining of vomiting and nausea. Prior to that date, the appellant had been admitted to the Greater Baltimore Medical Center where a brain scan and other tests were performed. All findings were negative. The appellant remained under the appellee's treatment until December 2, 1982. During the course of her treatment, she experienced headaches, vomiting, dizziness, a gait problem and recurrent episodes of falling. By the time the appellant terminated treatment, her symptoms had deteriorated to the point where she was unable to walk without assistance.

In August 1982, the appellant, who is a registered nurse, consulted Edward P. Costlow, M.D., in reference to her worsened condition. At that time, Dr. Costlow advised the appellant that he believed her problems to be physiological rather than psychological and recommended that she undergo a CAT scan.[1] The appellant did not undergo a CAT scan, however, until October, 1982. On November 8, 1982, the appellant was notified that the results of the scan revealed a Dandy–Walker cyst located in the posterior fossa of her brain.[2] Thereafter, on November 7, 1985, the appel-

---

**1.** A CAT scan (Computerized Axial Tomography) is a medical procedure whereby integrated X–ray and computing equipment is used to construct a three dimensional image of a body structure from a series of plane cross-sectional images made along an axis.

**2.** Dandy–Walker cyst is a congenital hydrocephalus (an increased accumulation of cerebrospinal fluid within the ventricles of the brain) caused by a blockage of the magendie and luschka, through which the cerebral spinal fluid passes.

lant filed a complaint with the Health Claims Arbitration Office, alleging that the appellee committed medical malpractice by failing to correctly diagnose her physical condition or refer her for a physical evaluation and/or appropriate diagnostic tests during the course of rendering psychiatric treatment over a period of eleven years.

The appellee identified Dr. Richard J. Otenasek, Jr., a neurological surgeon, as an expert witness, during the Health Claims Arbitration Hearing. Dr. Otenasek testified, by deposition, that the only effective test to diagnose the presence of a Dandy–Walker cyst was a CAT scan. Furthermore, he testified that the CAT scan first became available for use by the appellee in 1978.

### Discussion of Law
### I. Statute of Limitations

The primary purpose of statutes of limitations is to protect individuals against claims brought after a period of time which the legislature deems to be sufficient for a person of ordinary diligence to have brought an action. In this manner, defendants are protected from faded memories, lost evidence, missing witnesses and other mishaps that may occur over time. Additionally, statutes of limitations encourage promptness in instituting actions and spare the courts from the litigation of stale claims. *Johns Hopkins Hospital v. Lehninger*, 48 Md.App. 549, 561, 429 A.2d 538 (1981).

The statute of limitations applicable to the case at bar is Section 5–109 of the Cts. & Jud. Proc. Art., which provides:

§ 5–109. *Actions against physicians.*

An action for damages for an injury arising out of the rendering of or failure to render professional services by a health care provider, as defined in § 3–2A–01 of this article, shall be filed (1) within five years of the time the injury was committed or (2) within three years of the date when the injury was discovered, *whichever is the shorter* ... (Emphasis added).

## A. *Three Year Limitation*

The appellant asseverates that her claim is not barred by the three year statute of limitations under Md. Cts. & Jud. Proc.Code Ann. § 5–109(2).[3] The appellant contends that she did not have actual notice of her injury until she was advised of the results of the CAT scan on November 8, 1982.

The Court of Appeals, in *Hahn v. Claybrook*, 130 Md. 179, 184, 100 A. 83 (1917), held that the statute of limitations, in a medical malpractice action, "begins to run from the time a right of action accrues and not from the time that the damage is developed or becomes definite."

In *Hahn*, the plaintiff was treated by a physician from 1904–1910. The plaintiff noticed a skin discoloration in 1908 and filed a medical negligence action more than three years later. The Court held that the plaintiff's claim was time-barred because she had failed to exercise ordinary care and diligence in seeking to discover the cause of her alleged injury. *Id.* at 186, 100 A. 83. Also, in *Leonhart v. Atkinson*, 265 Md. 219, 224, 289 A.2d 1 (1972), the Court of Appeals observed that the cause of action in medical malpractice cases "accrues when the wrong is discovered or when with due diligence it should have been discovered."

Maryland recognizes the "discovery rule" whereby a cause of action accrues at the time the claimant first knew or *reasonably should have known of the alleged wrong.* This rule has been repeatedly applied in medical negligence cases. *Hill v. Fitzgerald*, 304 Md. 689, 501 A.2d 27 (1985); *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981); *Waldman v. Rohrbaugh*, 241 Md. 137, 215 A.2d 825 (1966); and *Lutheran Hospital v. Levy*, 60 Md.App. 227, 482 A.2d 23 (1984), *cert. denied*, 302 Md. 288, 487 A.2d 292 (1985).

In *Poffenberger v. Risser*, 290 Md. 631, 637, 431 A.2d 677 (1981), the Court of Appeals extended the "discovery rule" to all actions and held that actual knowledge is required. It

---

3. Courts Art. § 5–109(2) amended as to form July 1, 1987.

defined actual knowledge as either an express cognition, or awareness implied from

> knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. *Id.* at 637, 431 A.2d 677 (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969), quoting *Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697 (1950)).

The dispositive issue is when was the appellant put on notice that she may have been injured. The Court of appeals stated, in *O'Hara v. Kovens,* 305 Md. 280, 301, 503 A.2d 1313 (1986), that being "on notice" means "having knowledge of circumstances which would cause a reasonable person in the position of the plaintiff to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [wrong]."

In *Lutheran Hospital v. Levy, supra,* we held that a plaintiff, who had only a ninth grade education and was unskilled in medicine, had knowledge of circumstances which ought to have put her on inquiry (i.e., the deteriorating condition of her ankle) and that her failure to diligently investigate such injury within the time period of the statute, barred her claim. We held that "the crucial date is the date the claimant is put upon inquiry, not the date an expert concludes there has been malpractice." *Id.* 60 Md.App. at 240, 482 A.2d 23.

■ The above cases clearly illustrate that when a plaintiff has knowledge of circumstances indicating that he may have been harmed, the law imposes a duty on that plaintiff to investigate whether in fact he has been harmed. In other words, for limitation purposes, a claimant is held to be "on notice" when he has actual knowledge (express or implied) of a possible harm.

■ From the evidence presented, the appellant's condition had been deteriorating for over eleven years to the

point where she could not walk unassisted. When Dr. Costlow advised the appellant in August of 1982, however, that he believed her problems were not psychological but physiological and that she should undergo a CAT scan, the appellant postponed the scan until October, 1982.

We believe it clear that a reasonable factfinder could only conclude that the appellant's deteriorating physical condition and Dr. Costlow's advice put her on notice in August, 1982 that she may have been harmed by the appellee. Pursuant to Section 5–109(2) of the Maryland Courts and Judicial Proceedings Article, the appellant had three years from the date her injury was discovered, or with due diligence reasonably should have been discovered, to file her claim. That three year period ended in August, 1985 and therefore, the appellant's claim, subsequently filed on November 7, 1985 is barred. The appellant's reliance on the November 8, 1982 date is misplaced because that was the date on which an expert *concluded* that there had been malpractice, not the date on which the appellant was put on notice that she *may have been* injured.

■ The appellant claims, in any event, that her judgment was impaired and that, as a result, her claim should not be barred. In *Decker v. Fink,* 47 Md.App. 202, 209, 422 A.2d 389 (1980), *cert. denied,* 289 Md. 735 (1981), we declined to add the category of "impaired judgment" to the list of disabilities that would toll the running of the statute of limitations. If anything, the appellant's case for an "impaired judgment" disability is considerably weaker than that presented in *Decker.* In that matter, a patient brought suit against her psychiatrist, alleging that he improperly manipulated the analysis for the purpose of engaging in sexual relations, thereby aggravating her mental and emotional condition. We held that the allegations failed to constitute sufficient legal justification for not having filed the claim within the time allowed by the statute of limitations.

## B. *Five Year Limitation*

The appellant also avers that her claim is not barred by Md. Cts. & Jud. Proc. Code Ann. § 5–109(1), which requires that medical negligence claims be filed within five years of the time the injury was committed.

The Court of Appeals stated in *Hill v. Fitzgerald,* 304 Md. at 699, 501 A.2d 27, that "the words of § 5–109 expressly place an absolute five-year period of limitation on the filing of medical malpractice claims calculated on the basis of when the injury was committed, i.e., the date upon which the allegedly negligent act was first coupled with harm." The Court held that "Section 5–109 is couched in terms of when the injury was committed and not when the entire course of treatment is finally concluded." *Id.* at 700, 501 A.2d 27. Therefore, the common law continuing treatment rule was abrogated by the legislature when it enacted § 5–109. The five-year period was intended to run its full length only "in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. And this is so without regard to whether the injury was reasonably discoverable or not." *Id.* at 700, 501 A.2d 27.

It is undisputed that the only test that could have detected the cyst on the appellant's brain was a CAT scan. Therefore, the injury could not have occurred, for purposes of the statute of limitations, until the negligent act of failing to refer the appellant for a physical evaluation was first coupled with some identifiable harm. The appellee's expert testified, by deposition, that the CAT scan would not have been available to Dr. Ascher as a diagnostic tool until 1978. The appellant failed to take exception to this testimony nor has she offered any evidence, beyond mere assertions, to disprove the accuracy of that testimony. The five-year period, during which the appellant could have filed suit, at the latest, would therefore have run from 1978 to 1983. Consequently, the appellant's claim, subsequently

filed on November 7, 1985, is barred by both provisions of Md. Cts. & Jud.Proc.Code Ann. § 5–109.

The appellant attempts to avoid this result by postulating an enhanced version of her impaired judgment argument. She now contends that the special relationship between a psychiatrist and patient justifies an exception to the holding in *Hill v. Fitzgerald, supra,* and a resurrection of the continuing treatment rule. The appellant fails, however, to cite one case in which this court, or the Court of Appeals, has differentiated between psychiatrists and other physicians for purposes of medical malpractice. Indeed, Judge Finan stated on behalf of the Court in *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 714, 255 A.2d 359 (1969) (alleged malpractice against an attorney), that the courts should "focus attention on the fact that it is the failure to perform one's professional duties with reasonable skill and diligence which gives rise to the cause of action," and that "since such actions share the common gravamen of negligence, limitations should be applied in the same manner to all suits for professional malpractice...." *Id.*

## II. Summary Judgment

Md. Rule 2–501 provides for the granting of summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Indeed, the purpose of the summary judgment procedure is not to determine factual issues but rather to determine whether there is a dispute over material facts that should be tried. *Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980); *DiGrazia v. County Executive for Montgomery County,* 288 Md. 437, 418 A.2d 1191 (1980).

The appellant contends that summary judgment was improper "in view of the multitudinous items in dispute." We believe, however, that after rejecting the appellant's claims concerning the running of the statute of limitations, the trial court had only a mathematical task; the dates involved were properly found to be undisputed.

Based upon the facts and circumstances of this case, we are unable to conclude that the trial court erred in granting summary judgment. We hold, therefore, that the appellant's claim is barred by the time limitation provisions of Md. Cts. & Jud. Proc. Code Ann. § 5–109.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.