Filed 10/31/22 Osuna v. Tan CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| MONIQUE OSUNA, | B312699 |
| Plaintiff and Appellant, | |
| v. | Los Angeles County Super. Ct. No. 20STCV00343 |
| MARK C. TAN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael E. Whitaker, Judge. Affirmed.

Graham & Associates and Anthony G. Graham for Plaintiff and Appellant.

Law + Brandmeyer, Kent T. Brandmeyer and Jacob S. Rosenberg for Defendant and Respondent.

———————————————

Plaintiff Monique Osuna sued Dr. Mark C. Tan for failure to diagnose a hernia that had caused her pain for over two years by the time she saw him. Another doctor, Dr. Charles Chalekson, who is not a party to this appeal, had failed to diagnose the hernia more than two years earlier. Dr. Chalekson reexamined plaintiff about a month after her visit with Dr. Tan, diagnosed the hernia, and performed a surgery to repair it.

The trial court granted Dr. Tan's motion for summary judgment and plaintiff appealed. We affirm because plaintiff sued Dr. Tan more than one year and 90 days after Dr. Chalekson told her he misdiagnosed her two years earlier when he told her she was fine, which indisputably meant Dr. Tan also misdiagnosed her the month before Dr. Chalekson acknowledged his own mistake. (Code Civ. Proc., §§ 340.5, 364, subd. (d).)[1] Because we affirm on statute of limitations grounds, we need not, and do not, consider whether Dr. Tan's motion also presented meritorious substantive grounds.

## BACKGROUND

Before the hernia developed, in October 2015, Dr. Chalekson performed a mastectomy on plaintiff. As part of this surgery, Dr. Chalekson relocated tissue from plaintiff's abdomen to her chest. He then implanted a mesh in the abdominal donor site to prevent hernias.

But in April 2016, plaintiff developed a "knot on the left side of her belly button and became very sick, with vomiting and nausea." She presented to the emergency room at a hospital in San Luis Obispo where she underwent a CT scan. A doctor there

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

diagnosed her with a hernia and referred her back to Dr. Chalekson for further evaluation.

When plaintiff returned to Dr. Chalekson, he rejected the hernia diagnosis, deeming it impossible given his use of mesh to reinforce her abdomen.

Plaintiff's symptoms did not go away. On August 8, 2018, more than two years after the onset of her hernia, plaintiff saw Dr. Tan at City of Hope Comprehensive Cancer Center in Duarte. Dr. Tan assessed her symptoms as normal complications of the procedure Dr. Chalekson performed and recommended diet and exercise.

Plaintiff took Dr. Tan's advice to exercise, but it caused her more pain. So, on September 11, 2018, she consulted a physical therapist who, like the emergency room doctor in San Luis Obispo, referred her back to Dr. Chalekson. Plaintiff returned to Dr. Chalekson eight days later.

According to her complaint, Dr. Chalekson then told her his prior diagnosis—that she could not have a hernia and that she was "fine"—was wrong. Specifically, plaintiff alleged that, upon reexamining her in September 2018, Dr. Chalekson apologized "for failing to diagnose her properly earlier, for failing to understand the extreme pain she was in and what it meant." Dr. Chalekson then ordered a new CT scan from which he concluded that "the mesh had been improperly installed" and that her pain "had been caused by the mesh having torn away" and resultant hernia. Accordingly, plaintiff underwent surgery in October 2018 "to replace the torn mesh."

Plaintiff told a materially different version of events in her declaration in opposition to Dr. Tan's summary judgment motion than what she alleged in her complaint. In her declaration, as alleged in the complaint, plaintiff said she saw Dr. Chalekson in

3

September 2018, and he reexamined her and ordered a new CT scan. But there is no mention of Dr. Chalekson's post-examination apology and acknowledgment that he earlier misdiagnosed her. Nor is there mention of his interpretation of the new CT scan as providing a conclusive hernia diagnosis. Instead, plaintiff asserts in her declaration that it was *after* the second surgery Dr. Chalekson performed in October 2018 that he told her "the mesh had been improperly installed," and that her pain "had been caused by the mesh having torn away" and resultant hernia.

Documentary evidence shows that Dr. Chalekson knew plaintiff had an abnormal condition on the day he examined her and ordered a CT scan in September 2018. His post-visit notes from September 19, 2018, acknowledged "a palpable defect that is most noticeable across the left midline," and surgical site "disruption that is symptomatic and causing pain." And a post-CT scan report dated September 26, 2018, said Dr. Chalekson had ordered it to evaluate "[a]bdominal pain, incisional hernia without obstruction or gangrene." In short, consistent with plaintiff's allegations in her complaint concerning the content and timing of his apology, Dr. Chalekson knew upon examining her in September 2018 that he had misdiagnosed her in 2016.

Even after Dr. Chalekson's remedial surgery in October 2018, plaintiff continued to experience pain she traces back to Dr. Chalekson's initial operation.

On August 15, 2019, pursuant to section 364, plaintiff served Dr. Tan with notice that she intended to sue him. She filed her complaint, containing a single cause of action for medical malpractice, on January 6, 2020.

Dr. Tan moved for summary judgment. The trial court granted Dr. Tan's motion on both statute of limitations and substantive grounds. Plaintiff timely appealed.

## DISCUSSION

### 1. Summary Judgment Standard of Review

A defendant moving for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2).) Summary judgment is appropriate where "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.,* subd. (c).)

Our Supreme Court has made clear that the purpose of the 1992 and 1993 amendments to the summary judgment statute was " 'to liberalize the granting of [summary judgment] motions.' " (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 542.) It is no longer called a "disfavored" remedy. (*Ibid.*) "Summary judgment is now seen as 'a particularly suitable means to test the sufficiency' of the plaintiff's or defendant's case." (*Ibid.*)

On appeal, "we take the facts from the record that was before the trial court . . . . [Citation.] ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' " (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.) This approach requires us to examine only the correctness of trial court's ruling. We must affirm if the trial court reached the correct outcome, even if for the wrong reasons. (*County of San Mateo v. Superior Court* (2017) 13 Cal.App.5th 724, 730.)

5

2. **The Trial Court Properly Granted Summary Judgment**

The statute of limitations is a complete defense to an action for purposes of section 437c, subdivision (p)(2). "Thus, summary judgment is appropriate where the undisputed facts establish that a claim is barred by the statute of limitations." (*Arrow Highway Steel, Inc. v. Dubin* (2020) 56 Cal.App.5th 876, 883.) "While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112.)

a. **Applicable statute of limitations**

Plaintiff's sole cause of action is for medical malpractice—professional negligence by Dr. Tan in his capacity as plaintiff's healthcare provider. As such, section 340.5 supplies the applicable limitations period.

Section 340.5 provides in relevant part: "In an action for injury . . . against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . ."

Section 340.5 establishes two events that create alternative deadlines by which a plaintiff must sue, and the earlier to occur

6

of the two deadlines governs. A plaintiff alleging medical malpractice must sue by the date that is one year after she discovered, or should have discovered, her injury, or that is three years from the date of injury (subject to the enumerated exceptions), whichever "occurs first." Where, as here, discovery occurs more than a year before the date that is three years after injury, the three-year period becomes irrelevant because the expiration of the one-year period will necessarily "occur[] first."

" '[T]he term "injury," as used in section 340.5, means both "a person's physical condition *and* its 'negligent cause.' " ' " [Citation.] The word 'injury' for purposes of section 340.5 is a term of art that 'refer[s] to the damaging effect of the alleged wrongful act and not to the act itself.' [Citation.] The injury is not necessarily the ultimate harm suffered, but instead occurs at 'the point at which "appreciable harm" [is] first manifested.' " (*Brewer v. Remington* (2020) 46 Cal.App.5th 14, 24.)

In addition to the statute of limitations in section 340.5, another statute applies to an action for a healthcare provider's professional negligence, section 364. Section 364 requires at least 90 days' prior notice to the defendant of the plaintiff's intention to commence the action. (*Id.,* subd. (a).) It further states: "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." (*Id.,* subd. (d).)

The trial court misconstrued this provision, reading it without regard to binding interpretation by our Supreme Court. If the notice is given within 90 days of the expiration of the applicable limitations period, section 364, subdivision (d) does not merely *extend* the limitations period from the date of notice but rather *tolls* the limitations period for 90 days. (*Woods v. Young*

(1991) 53 Cal.3d 315, 328.) As a result, a plaintiff suing a healthcare professional for negligence who gives notice within 90 days before the limitations period expires has, where section 340.5's discovery-based deadline applies, one year *plus 90 days* in which to sue. (*Woods,* at p. 328.)

### b. Analysis

We affirm the trial court's summary judgment on statute of limitations grounds, but for different reasons than stated by the trial court.

Plaintiff concedes that the section 340.5 limitations period applicable to her claim is the one-year period keyed off the date she discovered her injury. Plaintiff disputes that the one-year period began September 19, 2018.

Dr. Tan concedes plaintiff served him with a section 364 notice within 90 days before expiration of that one-year period. Thus, in the absence of any other grounds for tolling, it is undisputed that plaintiff had one year and 90 days from the date she discovered her injury to sue Dr. Tan.

For the reasons that follow, no other grounds for tolling apply and plaintiff knew of her injury by September 19, 2018. As such, she had only until December 18, 2019, to sue Dr. Tan, rendering her January 6, 2020 complaint untimely.

### i. Plaintiff knew of her injury not later than September 19, 2018.

Plaintiff's cause of action against Dr. Tan rests on two basic facts: (1) when plaintiff saw Dr. Tan at his office on August 8, 2018, he negligently failed to diagnose her hernia and advised her to exercise; and (2) the exercise she performed on his advice caused her even more pain. The summary judgment record establishes that plaintiff knew these facts not later than September 19, 2018.

8

Not later than September 11, 2018, plaintiff knew the exercise Dr. Tan recommended was causing her excess pain. Prior to September 11, plaintiff attempted yoga and other exercises on Dr. Tan's advice and "suffered excruciating pain" as a result. On September 11, she saw a physical therapist about this. The physical therapist declined to work with plaintiff "due to the very high level of [plaintiff's] pain and swelling" and advised that such a high pain level required further evaluation by a doctor.

Not later than September 19, 2018, plaintiff knew that Dr. Tan failed to diagnose an abnormal medical condition at her August 8 visit with him. September 19 is when Dr. Chalekson admitted to plaintiff that his 2016 finding of no abnormal medical condition was incorrect. The unavoidable corollary to Dr. Chalekson's admission was that Dr. Tan's August 2018 finding was also incorrect: Plaintiff was suffering from the same hernia symptoms when Dr. Chalekson saw her in 2016 as she was both (i) when Dr. Tan saw her in August 2018, and (ii) when Dr. Chalekson saw her in September 2018. Dr. Tan reached the same conclusion after evaluating plaintiff in August 2018 that Dr. Chalekson reached after evaluating her in 2016: her condition was normal. Therefore, when Dr. Chalekson said on September 19, 2018, that his 2016 diagnosis was wrong, the unavoidable import was that Dr. Tan's August 2018 diagnosis was wrong.

Ignoring what she said in the complaint about Dr. Chalekson's September 19, 2018 admission, plaintiff argues she could not have known of Dr. Tan's misdiagnosis until October 11, 2018, when Dr. Chalekson performed his second surgery on her. This, she argues, is because Dr. Tan "admit[ted]" this surgery was a prerequisite to her knowledge of Dr. Tan's

9

misdiagnosis when, in briefing, Dr. Tan called the surgery "exploratory . . . to determine the origin of [plaintiff's] complaint of pain, revealing that the mesh had to be replaced." But plaintiff's theory of liability is not that Dr. Tan failed to intuit the condition of implanted surgical mesh by reviewing old charts and performing a physical examination. Rather, it is that he failed to recognize her symptoms were not "normal complications" from the 2016 procedure Dr. Chalekson performed; that her pain was not normal; and that the exercise he recommended would not resolve, but instead exacerbate, her pain.

In response to Dr. Tan's argument that plaintiff knew of her injury not later than when Dr. Chalekson examined her on September 19, 2018, plaintiff denies her allegations establish this. As she tells it, "the complaint merely says Dr. Chalekson ordered a CT scan, to discover what the problem might be. He then operated on her and **only then**, after October 11, 2018, did he inform her of the torn mesh and hernia." While this is a fair description of plaintiff's declaration in opposition to Dr. Tan's summary judgment motion, it severely mischaracterizes her complaint.

Again, plaintiff alleges in her complaint that Dr. Chalekson, after performing a physical examination and review of her medical records on September 19, 2018, apologized for misdiagnosing her in 2016. Dr. Chalekson then ordered a CT scan to evaluate plaintiff for a hernia, concluded from the CT scan that she did have a hernia resulting from the torn mesh, and advised plaintiff of this fact. On this basis, plaintiff thereafter "had surgery to replace the torn mesh."

Plaintiff cannot escape her allegations about what Dr. Chalekson told her, and when he told her, by offering a declaration or argument at odds with her complaint. "In

10

summary judgment . . . proceedings, '[a]dmissions of material facts made in an opposing party's pleadings are binding on that party as "judicial admissions."  They are *conclusive* concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her.' " (*St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.* (2003) 111 Cal.App.4th 1234, 1248; see also *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451 ["A party cannot create an issue of fact by a declaration which contradicts his prior pleadings"].)  The purpose of this rule is particularly well served where, as here, third party documentary evidence aligns with the plaintiff's allegations, and not with her declaration opposing summary judgment.

### ii.     The section 340.5 tolling provisions plaintiff relies on do not apply.

Plaintiff argues that her time to sue is tolled under the exceptions in the second sentence of section 340.5.  That sentence reads:  "In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."  (*Ibid*.)

Plaintiff claims the first two exceptions apply on the theory that Dr. Tan "indisputabl[y] . . . knew she had a serious medical issue" because her physical condition would have made this fact obvious to even a layman; ergo his failure to tell her she had a serious medical condition was a fraud or intentional concealment.  Plaintiff claims the benefit of the third exception "because this case involves the presence of a foreign body (toxic mesh) which indisputably had no therapeutic value (since it had failed years earlier and was causing a serious toxic infection)."

11

Plaintiff's arguments fail as a matter of law. The second sentence of section 340.5 serves only to toll section 340.5's three-year limitations period (which plaintiff agrees does not apply here); not its one-year limitations period. (*Belton v. Bowers Ambulance Serv.* (1999) 20 Cal.4th 928, 932 ["the second sentence applies only to the three-year maximum, not also to the one-year period"]; see also *Dolan v. Borelli* (1993) 13 Cal.App.4th 816, 824 ["concealment is an exception to the three-year, not one-year, limitations period in section 340.5"].) Indeed, it would make no sense for the fraud, concealment and foreign object exceptions to apply to the one-year period which is triggered by a plaintiff's actual or imputed discovery. (§ 340.5.) The fraud, concealment and foreign object exceptions address specific situations in which a plaintiff faces exceptional challenges that prevented her from earlier discovery of her injury. (See *Wallace v. Hibner* (1985) 171 Cal.App.3d 1042, 1050 [exceptions address circumstances "where a patient would have no reason whatsoever to suspect negligence"].)

### iii. We disregard plaintiff's undeveloped claims to the benefit of other tolling doctrines.

In two footnotes, plaintiff cites legal principles concerning the effect of a fiduciary relationship or a trust relationship on a plaintiff's duty to discover her injury. But plaintiff offers no explanation of how these principles operate on the facts of her case. We may, and do here, disregard substantive legal arguments presented only in such cursory fashion. (See, e.g., *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160 [appellate court may disregard points raised in a footnote rather than being properly presented under a discrete heading with appropriate analysis].)

**DISPOSITION**

The judgment is affirmed.  Dr. Tan is to recover his costs on appeal.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


HARUTUNIAN, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.